[No. B061491. Second Dist., Div. Three. Apr. 28. 1994.]

In re BABY BOY L., A Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S
SERVICES, Plaintiff and Respondent, v.
ANDREA L., Defendant and Appellant.

## COUNSEL

Dorothy J. Kray for Defendant and Appellant.

De Witt W. Clinton, County Counsel, Leona R. Salazar and Joyce Aiello for Plaintiff and Respondent.

## OPINION

CROSKEY, J.—Andrea L. appeals from the order of the juvenile court freeing her child, Baby Boy L., for adoption. The child, who was born on August 7, 1989, was adjudicated a dependent child of the juvenile court under Welfare and Institutions Code section 300, subdivisions (b) and (g) on September 11, 1989.[1] On that same date, the child was removed from

---

[1] Unless otherwise noted, further statutory references are to the Welfare and Institutions Code.

Section 300 provides in pertinent part as follows: "Any minor who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b) The minor has suffered . . . serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the minor, or . . . by the inability of the parent or guardian to provide regular care for the minor due to the parent's or guardian's . . . substance abuse. . . . [¶] . . . [¶] (g) The minor has been left without any provision for support . . . ,

Andrea's custody under section 361,[2] and reunification services were found not necessary under section 361.5, subdivision (b)(1).[3]

On July 15, 1991, Baby Boy L. was freed for adoption under section 366.26,[4] the court finding him adoptable by clear and convincing evidence

the whereabouts of the parent is unknown, and reasonable efforts to locate the parent have been unsuccessful."

[2]Section 361 provides in pertinent part as follows: "(a) In all cases in which a minor is adjudged a dependent child of the court on the ground that the minor is a person described by Section 300, the court may limit the control to be exercised over the dependent child by any parent or guardian and shall by its order clearly and specifically set forth all such limitations. . . . [¶] (b) No dependent child shall be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated unless the juvenile court finds clear and convincing evidence of any of the following: [¶] (1) There is a substantial danger to the physical health of the minor or would be if the minor was returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parents' or guardians' physical custody. . . . [¶] . . . [¶] (5) The minor has been left without any provision for his or her support, . . . and the whereabouts of the parent is unknown and reasonable efforts to locate him or her have been unsuccessful. [¶] (c) The court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home or, if the minor is removed for one of the reasons stated in paragraph (5) of subdivision (b), whether it was reasonable under the circumstances not to make any such efforts. The court shall state the facts on which the decision to remove the minor is based."

[3]Section 361.5, subdivision (b) provides in pertinent part as follows: "(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] (1) That the whereabouts of the parent or guardian is unknown. A finding pursuant to this paragraph shall be supported by an affidavit or by proof that a reasonably diligent search has failed to locate the parent or guardian. . . ."

[4]Section 366.26 provides in pertinent part as follows:

"(a) This section applies to minors who are adjudged dependent children of the juvenile court pursuant to subdivision (c) of Section 360 on or after January 1, 1989. The procedures specified herein are the exclusive procedures for conducting these hearings; . . . [¶] (b) At the hearing, which shall be held in juvenile court for all minors who are dependents of the juvenile court, the court in order to provide stable, permanent homes for these minors, shall review the report as specified in Section 361.5, 366.21, or 366.22, shall indicate that the court has read and considered it, shall receive other evidence that the parties present, and then shall do one of the following: [¶] (1) Permanently sever the rights of the parent or parents and order that the child be placed for adoption. [¶] . . . [¶] In choosing among the above alternatives the court shall proceed pursuant to subdivision (c). [¶] (c) At the hearing the court shall proceed pursuant to one of the following procedures: [¶] (1) The court shall terminate parental rights only if it determines by clear and convincing evidence that it is likely that the minor will be adopted. If the court so determines, the findings pursuant to subdivision (b) or paragraph 1 of subdivision (e) of Section 361.5 that reunification services shall not be offered or the findings pursuant to subdivision (e) of Section 366.21 that the whereabouts of a parent have been unknown for six months or that the parent has failed to visit or contact the child for six months or that the parent has been convicted of a felony indicating parental unfitness, or pursuant to Section 366.21 or 366.22 that a minor cannot or should not be returned to his or her parent or guardian, shall then constitute a sufficient basis for termination of parental rights

and having previously found by clear and convincing evidence that reunification services should not be provided.

We find no errors in the proceedings below and shall therefore affirm the order of the juvenile court.

### FACTUAL AND PROCEDURAL BACKGROUND

Andrea L. is the mother of Baby Boy L., who was born with a toxic condition indicating cocaine addiction, which could only have resulted from Andrea's use of cocaine during pregnancy. The baby was taken into protective custody at birth by the department of children's services (the Department). Andrea made one telephone call to the Department from the hospital where her baby was born, but she did not appear at the jurisdiction and dispositional hearing regarding the child on September 11, 1989, and her whereabouts were essentially unknown from that time until October of 1990.

Andrea was 14 years of age when her first child was born. Thereafter, she attempted unsuccessfully to finish school, but left home at the age of 17 and set up her own residence on welfare funds. She later married Larry F., lived with him for four years and had two children with him. At the time of Baby Boy L.'s conception and during the pendency of the proceedings below, Larry F. was incarcerated.

Andrea's two eldest children were cared for by their maternal grandmother. The third was cared for by their paternal grandmother, Larry F.'s mother. Neither grandparent could care for Baby Boy L., nor was any other relative available to care for him.

At the time of the six-month review hearing respecting Baby Boy L., Andrea's whereabouts remained unknown. The child, who had been in two placements, was doing well in his present foster home.

At the review hearing of October 22, 1990, Andrea appeared and requested reunification services. According to the social study, the child was

---

unless the court finds that termination would be detrimental to the minor due to one of the following circumstances: [¶] . . . [¶] (2) The court shall not terminate parental rights if at each and every hearing at which the court was required to consider reasonable efforts or services, the court has found that reasonable efforts were not made or that reasonable services were not offered or provided. [¶] . . . [¶] (i) If the court, by order or judgment declares the minor free from the custody of both parents . . . the court shall at the same time order the minor referred to the State Department of Social Services or a licensed adoption agency for adoptive placement by the agency. However, no petition for adoption may be granted until the appellate rights of the natural parents have been exhausted. . . ."

over a year old and was bonded to his foster parents, who wished to adopt him. He was receiving good physical and emotional care and was developing normally. The court informed Andrea that if she wished a contested hearing on the issue of instituting reunification, she would be required to file a petition under section 388.[5] Meanwhile, a "2-6," that is, a hearing under section 366.26 for the selection and implementation of a permanent plan, was scheduled for February 19, 1991.

On January 11, 1991, Andrea was arrested and jailed for sale of a controlled substance. She was scheduled for release on March 17. The section 366.26 hearing was continued to April 22, 1991. On April 22, Andrea did not appear for the hearing. She was ordered to participate in counseling for drug and alcohol abuse and to submit to random drug testing, and the matter was continued for a hearing under section 366.26 to October 21, 1991, a date which would have been beyond the last permissible date for such a hearing. Upon motion of the Department, the hearing was advanced to July 15, 1991. Andrea visited Baby Boy L. once, on June 4, 1991, and did not request further visits.

On July 15, 1991, Andrea appeared and presented to the court a letter from a counselor at Family Services of Long Beach. In the letter, the counselor attested that Andrea was enrolled in a drug counseling program and appeared sincere in her desire to become drug free. However, the counselor stated her attendance at counseling was imperfect, that she had missed two appointments for drug testing, and that he was unable as yet to render an assessment of her ability to provide a home for her child. Andrea addressed the court and asked for return of her child, as she was endeavoring to recover from drug dependency. The court expressed sympathy for Andrea's efforts, but found it was required by statute to free the child for adoption under the circumstances existing at the time of the hearing. The court then found the child adoptable and freed him for adoption. This timely appeal followed.

---

[5]Section 388 provides as follows: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court or the child himself through a properly appointed guardian may, upon grounds of change of circumstances or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and, if made by a person other than the child, shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction. [¶] If it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction, the court shall order that a hearing be held and shall give prior notice, or cause prior notice to be given, to such persons and by such means as prescribed by Section 386, and in such instances as the means of giving notice is not prescribed by such sections, then by such means as the court prescribes."

CONTENTS ON APPEAL

Andrea contends that: (1) the court erred in failing to offer reunification services and failing to find by clear and convincing evidence that the parents' whereabouts remained unknown at the time of the six-month review; (2) she was deprived of due process by the court's failure to make findings by clear and convincing evidence at the time of the hearing under section 366.26 that *at that time* there continued to be a severe risk of detriment to the child if he were returned to Andrea's custody; (3) the court erred in failing to consider changed circumstances which existed at the time of the section 366.26 hearing; and (4) there was insufficient evidence to find by the clear and convincing standard that Baby Boy L. was adoptable.

DISCUSSION

1.  *The Court Below Complied With All Applicable Statutory Requirements in Referring the Minor for a Selection and Implementation Hearing Under Section 366.26.*

a.  *Outline of Applicable Statutes and Rules.*

In 1987, the Legislature extensively revised the statutory scheme governing juvenile dependency proceedings, particularly those proceedings which end in a termination of parental rights. (Stats. 1987, ch. 1485, p. 5598; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 247 [19 Cal.Rptr.2d 698, 851 P.2d 1307] [*Cynthia D.*].) Under the current scheme, a child may be removed from his or her parents' or guardians' custody if a peace officer, probation officer or social worker has reason to believe the child falls within the definitions of a "dependent child" set forth in section 300. (§§ 305, 306; *Cynthia D., supra*, 5 Cal.4th at pp. 247-248.) A petition to have such a child declared a dependent child of the court must be filed within 48 hours, excluding nonjudicial days (§ 313; Cal. Rules of Court, rule 1440(d)), and if the child is detained outside the parents' home, a hearing on the petition must be held within 15 judicial days. (§ 334; Cal. Rules of Court, rule 1447(b).) At this hearing, the court determines whether the child comes within its jurisdiction. Jurisdictional findings must be made by a preponderance of the evidence. (§ 355; Cal. Rules of Court, rule 1450(f).)

If the court finds jurisdiction under section 300, it then holds a dispositional hearing (§ 358; Cal. Rules of Court, rules 1450(g), 1455), at which the court determines whether the child may be returned to his parent or must be removed under section 361, subdivision (b). The standard of proof for removal from a custodial parent is clear and convincing evidence. (§ 361,

subd. (b); Cal. Rules of Court, rule 1456(c).) If the child is removed under section 361, the court under most circumstances must make orders for reunification services. (§ 361.5.) However, under certain specified circumstances, including where the court finds by clear and convincing evidence that the parents' whereabouts are unknown, reunification services need not be provided. (§ 361.5, subd. (b)(1).)[6]

After the dispositional hearing, the court must review the case at least once every six months. (§ 366.) At these review hearings, in the usual case, there is a statutory presumption that the child will be returned to parental custody, unless the department of social services establishes by a preponderance of the evidence that return would create a risk of detriment to the child's physical or emotional health. If the child is not returned to parental custody at the first six-month review, the court must order the continuation of reunification services and order any additional services that appear reasonably necessary (§ 366.21, subds. (e), (f); § 366.22, subd. (a).) However, these requirements do not apply where, as here, the court has ordered that reunification services shall not be provided. (§ 366.21, subd. (e), ¶ 1.)

Where reunification services were not ordered because the parents' whereabouts were unknown, and the child was declared a dependent under section 300, subdivision (g) (minor left without provision for his or her support, and parent is incarcerated, or his or her whereabouts are unknown), and the court finds by clear and convincing evidence that the parents' whereabouts are still unknown, or the parents have failed to contact or visit the child, the court may schedule a hearing under section 366.26 to select and implement a permanent plan for the child within 120 days of the first 6-month review hearing. (§ 366.21, subd. (e), ¶ 2.) In all cases, a hearing under section 366.26 must be scheduled within 18 months of the date the child was originally removed from the parents' physical custody. (§ 366.21, subd. (g)(1); § 366.22, subd. (a), ¶ 2.)

Finally, at the hearing under section 366.26, the court must free the child for adoption if: (1) it determines by clear and convincing evidence that the

---

[6]Other circumstances in which reunification services need not be provided are where the court finds by clear and convincing evidence that: the parent suffers from a mental disability that prevents him or her from utilizing such services (§ 361.5, subd. (b)(2); the minor was previously adjudicated a dependent child because of severe abuse, was removed from the parents' custody, later returned, and is again being removed for further abuse (§ 361.5, subd. (b)(3); the parent has been convicted of causing the death of another child through abuse or neglect (§ 361.5, subd. (b)(4); the minor was declared a dependent under section 300, subd. (e) because of severe physical abuse caused by conduct of the parent (§ 361.5, subd. (b)(5)); the minor was declared a dependent because of severe abuse inflicted by the parent, and the court finds reunification services would not benefit the child. (§ 361.5, subd. (b)(6)).

child is adoptable, and (2) there has been a previous determination that reunification services should not be offered or that the child should not be returned to the parent, and (3) the court does *not* find that the child would benefit from continued contact with the parents (§ 366.26, subd. (c)(1)(A)) or other specified circumstances. (§ 366.26., subd. (c)(1).)[7]

b. *Application of the Statutes in This Case.*

The mother's contention that the court in this case failed to comply with the above statutory requirements for ordering a hearing under section 366.26 is simply mistaken. ■ First, the court found by clear and convincing evidence at the combined jurisdiction and dispositional hearing that the mother's and father's whereabouts were unknown. Andrea contends the social study prepared for that date did not contain anything excepting her from the requirement of reunification services. However, the report plainly indicated the parents' whereabouts were unknown. At the hearing, the Department's representative filed a "due diligence" declaration as to each parent, as required by section 361.5, subdivision (b)(1) before reunification services may be denied on grounds that the parents' whereabouts are unknown. Based upon the due diligence declarations, the court found the whereabouts of both parents were unknown. Having so found by clear, convincing, and essentially undisputed evidence, the court was not required to order reunification services. (§ 361.5, subd. (b)(1).)

■ Nor did the court err at the time of the first six-month review by failing to make an express finding that the parents' whereabouts remained unknown. If such a finding is made, a hearing under section 366.26 may be scheduled within 120 days. However, the court in this case did not purport to schedule such a hearing within 120 days, so the failure to make findings regarding the parents' whereabouts had no effect.

■ At the hearing under section 366.26, the court found by clear and convincing evidence that the child was adoptable. That finding, together

---

[7]Circumstances in which the court should not free for adoption an adoptable child who has been removed from parental custody and cannot or should not be returned are: (1) as above, where the child would benefit from continued contact with the parents, and they have maintained regular visitation with him or her (§ 361, subd. (c)(1)(A)); (2) a child 12 years of age or older objects to termination of parental rights (§ 366.26, subd. (c)(1)(B)); (3) the child is in a residential treatment facility, and adoption is unlikely or undesirable, and continuation of parental rights will not prevent finding the child a permanent home if the parents cannot resume custody when residential care is no longer needed (§ 366.26., subd. (c)(1)(C)); (4) the child is living with a relative who cannot adopt the child but is willing to accept legal responsibility for him or her, and removal of the child from that relative's custody would be detrimental to the child. (§ 366.26, subd. (c)(1)(D).)

with the court's previous finding at the jurisdiction and dispositional hearing that the parents' whereabouts were unknown and reunification services were therefore not required, was all that was required in order to free the child for adoption. (§ 366.26, subd. (c)(1).)

2. *California's Statutory Scheme for Freeing Dependent Children of the Juvenile Court for Adoption Is Constitutional.*

During the pendency of this appeal, the California Supreme Court determined that the procedures provided in section 366.26 for the termination of parental rights comply with constitutional requirements of due process. (*Cynthia D., supra,* 5 Cal.4th at p. 256.) That determination was allowed to stand by the United States Supreme Court by a denial of certiorari in the case on March 7, 1994. (*Dobles* v. *San Diego Department of Social Services* (1994) __ U.S. __ [127 L.Ed.2d 567, 114 S.Ct. 1221].)

■ Both the California and United States high courts long ago determined that due process is violated if a parent's rights to the care and custody of his or her child are terminated upon findings by anything less than clear and convincing evidence that the parent cannot or will not provide a loving and stable home for the child. (*Santosky* v. *Kramer* 1982) 455 U.S. 745, 769-770 [71 L.Ed.2d 599, 616-617, 102 S.Ct. 1388]; *In re Angelia P.* (1981) 28 Cal.3d 908, 919 [171 Cal.Rptr. 637, 623 P.2d 198].) In *Cynthia D., supra,* the California Supreme Court concluded the statutory scheme provided by sections 361 through 366.26 satisfies the requirements of due process, although the only matter required to be found by clear and convincing evidence at the termination hearing is that the minor is adoptable. (5 Cal.4th at pp. 253-256.)

This is true, the Supreme Court explained, because numerous hearings precede the one at which termination may be ordered, and at each such hearing, conditions calling for termination must have been found to exist, or the case never proceeds as far as a hearing on termination. (*Cynthia D., supra,* 5 Cal.4th at p. 253.) At the hearing in which a child is originally ordered removed from parental custody, the court is required to make findings by clear and convincing evidence that removal is necessary to avoid substantial danger to the child's physical or emotional health. (§ 361, subd. (b).) At subsequent hearings, the court must return the child to the parents' custody unless it is found by a preponderance of the evidence that return would create a substantial risk of detriment to the child's physical or emotional health. (§ 366.21, subds. (e), (f); § 366.22, subd. (a).)

For this reason, the high court concluded the three factors which the United States Supreme Court, in *Santosky* v. *Kramer, supra*, 455 U.S. 745, relied upon to require an elevated standard of proof for termination are satisfied by the statutory scheme *considered as a whole. (Cynthia D., supra,* 5 Cal.4th at p. 253.) "By the time termination is possible under our dependency statutes the danger to the child from parental unfitness is so well established that there is no longer 'reason to believe that positive, nurturing parent-child relationships exist' [citations], and the *parens patriae* interest of the state favoring preservation rather than severance of natural familial bonds has been extinguished. At this point . . . , it has become clear 'that the natural parent cannot or will not provide a normal home for the child' [Citation], and the state's interest in finding a permanent alternate home is fully realized. In light of the earlier judicial determinations that reunification cannot be effectuated, it becomes inimical to the interests of the minor to heavily burden efforts to place the child in a permanent alternative home. By the time of the section 366.26 hearing, no state interest requires further evidence of the consequences to the child of parental unfitness, let alone evidence that meets an elevated standard of proof." *(Id.* at p. 256.)

It bears emphasis that the juvenile court in this case found by clear and convincing evidence at the first hearing that this child's parents had, in effect, abandoned him, and also found by the same standard that, even if the parents could be found, return of the baby to their custody would create a substantial danger to his physical or emotional well-being. Nearly two years later, after Andrea had visited the baby only once in that time and had failed to demonstrate any real change in her ability or willingness to be a mother to him, the court found by clear and convincing evidence that he was adoptable. No more was required by the applicable statutes or by the Constitution to justify freeing him for adoption.

3. *The Court Based Its Order Freeing the Minor for Adoption Upon Appropriate Circumstances.*

■ Neither section 366.26 nor the Constitution required the court to consider Andrea's present circumstances at the time of the hearing under section 366.26 before ordering the child freed for adoption. The court was only required to consider whether the child was adoptable. (§ 366.26., subd. (c)(1); *In re Marilyn H.* (1993) 5 Cal.4th 295, 304, 310 [19 Cal.Rptr.2d 544, 851 P.2d 826].) After the court has removed a child from parental custody and determined that a permanent plan is appropriate, the court need not make those determinations again unless the parent presents evidence, pursuant to section 388, that her circumstances have changed sufficiently to justify a

change in the court's orders. (5 Cal.4th at p. 309; *In re Heather P.* (1989) 209 Cal.App.3d 886, 891-892 [257 Cal.Rptr. 545].)

Here, at the hearing of October 22, 1990, at which the court first scheduled a hearing under section 366.26, Andrea made her first appearance in the proceedings and requested reunification services. At that time, the child was 14 months of age. When the court informed Andrea that the only way the issue of reunification could be revisited would be through a petition under section 388, Andrea's attorney stated that a petition under section 388 would be filed. However, it does not appear from the record that such a petition was ever filed.

Nevertheless, the record suggests the court gave Andrea ample opportunity to establish a change of circumstances. A hearing under section 366.26 was not in fact held on February 19, 1991. Andrea was in jail on that date. Proceedings were continued to April 22, 1991, for a hearing under section 366.26. Andrea was released from jail on March 11. The minute order for April 22, 1991, shows that the court again made no orders under section 366.26. Instead, the court ordered Andrea to participate in counseling for alcohol and drug abuse and submit to drug testing, and continued proceedings to October 21, 1991, for a hearing under section 366.26.[8] On May 20, the hearing was advanced to July 15, 1991, essentially the latest permissible date for such a hearing. (§ 366.21, subd. (g).)

At the hearing on July 15, 1991, Andrea's attorney represented to the court that Andrea was participating in drug counseling and had brought letters to that effect from her counselor. Counsel also represented that Andrea's drug tests had all been negative.

The court asked the Department's attorney to respond to Andrea's argument that she was rehabilitating herself from drug dependency. Counsel responded that these efforts were "too little too late." In addition, the Department's attorney represented to the court that Andrea had never furnished proof of clean drug tests to the Department. Andrea's attorney stated she could provide the tests to the court, but she evidently did not have test

---

[8]Andrea does not contend, and we do not find, that the court's order for drug and alcohol counseling, made on April 22, 1991, constituted a de facto order for reunification services. The order was apparently made at a hearing respecting Andrea's two older children, as well as Baby Boy L. It is thus reasonably likely the order was for purposes of reunification with those children. Such an order would be improper respecting Baby Boy L., as the statutory time limit for reunification passed in mid-March of 1991, and a section 366.26 hearing was mandatory within 120 days, or 4 months, of that time.

results with her at the hearing. Andrea herself made the following statement to the court: "I would like to have a chance to have my baby because I was once on drugs, but now I am trying to get my life back together."

After consulting the Welfare and Institutions Code, the court stated, "I have some sympathy for the mother's recent attempt, but the juvenile court law as I regard it is clear in this situation that if the parent has not maintained regular visitation and contact and the minor is adoptable, then I am directed by the code to terminate the parental rights." The court then ordered the child freed for adoption.

The court's ruling was correct. When a child has been removed from parental custody under section 361.5, and the court has determined that reunification services need not be offered or should be terminated, the Supreme Court has held it is not unduly burdensome to shift the burden to the parent to file a petition based upon changed circumstances, in order to have the child returned. (*In re Marilyn H., supra*, 5 Cal.4th at p. 309.) Such a petition may be filed at any time before the section 366.26 hearing, and the parent need only make a prima facie showing of changed circumstances to trigger the right to a full hearing. (5 Cal.4th at p. 310; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413-1414 [5 Cal.Rptr.2d 148].) However, the court is not required to entertain an oral motion under section 388 at the time set for the 366.26 hearing. If there were such a requirement, the Supreme Court has determined, ". . . there would be nothing to preclude a parent from appearing at a section 366.26 hearing and, without prior notice to the court and other parties, assert a meritless claim of changed circumstances necessitating a delay of the hearing to allow the court to determine whether there is sufficient evidence to hold a hearing on the issue and to allow the other parties time to respond. After resolution of the issue raised, another such claim conceivably could be raised at the next section 366.26 hearing. This could result in lengthy and unnecessary delay in providing permanency for children, the very evil the Legislature intended to correct." (*In re Marilyn H., supra*, 5 Cal.4th at p. 310.)

A parent's rights to the care and companionship of her child are, of course, compelling. But the child's rights to a stable and loving family are equally compelling, and in any decision regarding the child's custody, the two must be balanced. The balance between the parent's and the child's rights shifts after the child has been removed from the parent's home for a substantial time, owing to abuse or neglect by the parent, and the parent has failed to correct the problems which led to the removal. (*In re Marilyn H., supra*, 5 Cal.4th at p. 307.) Accordingly, under California law, after reunification services are terminated in a dependency proceeding, the focus of the

court's concern shifts from assisting the parent in reunification with the child to securing a stable new home for the child. (*Ibid.*)

By the time of the 366.26 hearing in this case, Baby Boy L. was nearly two years of age and had been removed from Andrea's custody for well over eighteen months. This is not a case in which the record suggests that the mother's circumstances had changed for the better, and yet the court refused to receive evidence of the improvement. Quite the contrary. The mother remained entirely out of the picture for the first 13 months of the proceedings—the first 14 months of the child's life. Only then did she appear, requesting reunification. Three months later, she was in jail and remained there until approximately the latest time allowed for any continuation of reunification efforts. Three months after that, at the eleventh hour and the fifty-ninth minute, she offered a bare scintilla of proof that she was *beginning* to rehabilitate. But "[c]hildhood does not wait for the parent to become adequate." (*In re Marilyn H., supra*, 5 Cal.4th at p. 310.) A mere prima facie showing of changing—we hesitate to say, "changed"—circumstances was not enough to require or justify a hearing on return of the child to her after two years. (*Ibid.*)

### 4. *There Is Sufficient Evidence the Minor Is Adoptable.*

■ Finally, there is no merit to Andrea's contention that there was insufficient evidence that the child was adoptable. We review the factual basis of a termination order to determine whether the record contains substantial evidence from which a reasonable trier of fact could find a factual basis for termination by clear and convincing evidence. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214 [272 Cal.Rptr. 316]; *In re Amos L.* (1981) 124 Cal.App.3d 1031, 1038 [177 Cal.Rptr. 783].) The evidence in this case was sufficient to support the required findings.

In a psychological evaluation performed in February of 1991, the child was found normal and "a good candidate for adoption." The social worker's report filed on July 15, 1991, states he was still "highly adoptable" at that time. At the July 15 hearing the Department's attorney represented to the court that the child was "an adorable little boy who is adoptable." Counsel also noted that the child had none of the characteristics listed in section 366.26 as justifying a finding that a child would be difficult to place for

adoption.[9] Indeed, it appeared the sole circumstance directly relating to the child himself which impeded adoption was the fact that the child had not been freed. The Department's attorney represented that the child's foster parents, who initially asked to adopt him, withdrew their request because the foster mother became pregnant. A second adoptive placement failed, because the family did not wish to become emotionally attached to a child who had not been freed for adoption.

Sufficient evidence before the court thus justified the findings by clear and convincing evidence that the child was not only adoptable, but in urgent need of an order freeing him for adoption at the earliest possible moment.

5. *The Law No Longer Tolerates Delay in Proceedings for the Securing of Permanent and Stable Homes for Dependent Children.*

"Baby Boy" L. is now nearly five years of age and has still not been freed to be adopted into a family he can count on to care for him forever. Although not commented upon by the parties, we cannot help observing that neither this child's need for a permanent home, nor the Legislature's intent of avoiding delays in dependency proceedings has been furthered at any point in this case. After several delays in the juvenile court, there have been several more on appeal.

Although appeals in dependency cases are required to be given priority over all other appeals (§ 395), this appeal has been pending for two and a half years—longer than the case was pending in the trial court. Counsel was appointed on November 27, 1991, but did not receive the record on appeal until February 1, 1992. On May 27, 1992, the first of three successive requests to augment the record was filed, and was thereafter granted. Interspersed among the augmentation requests were five requests for extensions of time to file appellant's opening brief.

Appellant's opening brief was filed on May 27, 1993. One request for an extension of time to file respondent's brief was filed and granted, and

---

[9]Section 366.26, subdivision (c)(3) provides that if the court finds termination would not be detrimental to the minor, and the minor has a probability of being adopted, but is difficult to place for adoption, adoption may be identified as the permanent plan, but termination of parental rights may be delayed for 90 days for intensive efforts to secure an adoptive placement. That subdivision provides that a child may be found difficult to place only if there is no identified or available placement because of the child's (1) membership in a sibling group, or (2) diagnosed medical, physical or mental handicap, or (3) age of seven or more.

respondent's brief was filed on August 6, 1993. The case was not calendared for oral argument until eight months later, on April 20, 1994.

New rule 39.1A of the Rules of Court, effective January 1, 1994, provides for means of avoiding the kinds of delay which have occurred in this case. The rule, which is experimental and expires January 1, 1996, includes several streamlining procedures, including the following provisions: Review *by extraordinary writ* of orders terminating parental rights is encouraged. Where such review is sought, the rule provides that an appeal will be deemed an inadequate remedy. (Rule 39.1A(b).) The preparation and delivery to counsel of the appellate record in such proceedings is required to be expedited, and the covers of transcripts are required to bear the conspicuous notation, "Appeal from order terminating parental rights," with the code section under which rights were terminated identified. (Rule 39.1A(c).) Preparation of augmentations in such proceedings is given "highest priority." In particular, an appellant's request to augment the record must be filed within 15 days after counsel receives the original record; a respondent's augmentation request must be filed within 15 days of the filing of the appellant's opening brief; if possible, the request for augmentation should include copies of the requested documents. (Rule 39.1A(d).) The courts are required to adopt procedures to expedite the processing of appeals in parental rights termination cases, and the clerks of the courts are required to provide data to the Judicial Council to assist in evaluating the efficacy of the new rule. (Rule 39.1A(e).) A schedule for briefing and argument is prescribed, which permits determination of such cases *within 250 days.* In particular, the appellant's opening brief must be filed within 30 days after the record is filed in the reviewing court; the respondent's brief must be filed 30 days thereafter, and the minor's brief and the appellant's reply brief, within the next 20 days. (Rule 39.1A(f).) Arguments must be held no later than 60 days after the filing, or due date, of the last brief filed. If oral argument is waived the case will be deemed submitted 60 days after the last brief is filed, or due to be filed. (Rule 39.1A(g).) Extensions of time to prepare the record or file briefs may be granted only upon "an exceptional showing of good cause," and may be granted only by the reviewing court. (Rule 39.1A(h).)

To assure that no child who needs and deserves a permanent home misses the chance to have one, this court will rigorously comply with rule 39.1A of the California Rules of Court. In addition, at oral argument, counsel for the county inquired how his office might assist in expediting dependency appeals. At the very least, the county should carefully review all requests by appellants for extensions of time to file briefs, oppose such requests where

appropriate, citing rule 39.1A(h), and avoid requests of its own for extensions of time except in the most compelling circumstances.

DISPOSITION

The order of July 15, 1991, freeing Baby Boy L. for adoption is affirmed.

Klein, P. J., and Kitching, J., concurred.