5 Cal.4th 295 (1993)
851 P.2d 826
19 Cal. Rptr.2d 544
In re MARILYN H. et al., Persons Coming Under the Juvenile Court Law.
KERN COUNTY DEPARTMENT OF HUMAN SERVICES, Plaintiff and Respondent,
v.
DEBBIE H., Defendant and Appellant.
Docket No. S025592.
Supreme Court of California.
June 3, 1993.
*298 COUNSEL
Kimball J.P. Sargeant, under appointment by the Supreme Court, for Defendant and Appellant.
B.C. Barmann, County Counsel, and Stacy L. Inman, Deputy County Counsel, for Plaintiff and Respondent.
Lloyd M. Harmon, Jr., County Counsel (San Diego), Susan Strom, Terri L. Richardson and Gary C. Seiser, Deputy County Counsel, as Amici Curiae on behalf of Plaintiff and Respondent.
Lucretia Hoke Parks, under appointment by the Supreme Court, for Minors.
OPINION
PANELLI, J.
This is one of several cases we have taken to resolve issues involving juvenile dependency proceedings pursuant to Welfare and Institutions Code section 300 et seq.[1] The issue we address in this case is whether the statutory framework gives the juvenile court discretion to consider returning the minors to the parent at the section 366.26 selection and implementation hearing, and, if not, whether it denies due process.[2] The Court of Appeal held that section 366.26 does not authorize consideration of reunification as an option but that due process is satisfied because the issue may be raised by filing a petition pursuant to section 388 for modification or termination of jurisdiction based on changed circumstances. We agree and affirm the judgment.

FACTS
Dependency petitions were filed in the Kern County Juvenile Court alleging that Marilyn H., age five, and Richard H., age seven, (minors) came within subdivision (a) of section 300 in that they would suffer serious physical harm or illness by the willful and negligent failure of Debbie H. (mother) to provide adequate food, clothing, shelter or medical treatment for them. The petitions alleged that the family had been living in a 14-foot trailer in the open desert with no electricity or running water. The trailer had several broken windows, debris covered the floor, and there were holes in *299 the trailer shell. A large gas barbecue had been used for heat inside the trailer. Both minors were infested with lice. Minors were detained and placed in a foster home.
At the dispositional hearing in March 1989, minors were adjudged dependent children of the juvenile court and were ordered into foster home placement. Reunification services for mother were ordered. Visits with the paternal grandparents were also ordered. In May 1989, minors were placed with their paternal grandparents.
At the 12-month review hearing on March 7, 1990, the juvenile court continued the out-of-home placement and extended reunification services an additional 5 months.
On July 25, 1990, at the 18-month review hearing, the juvenile court found that there had been only moderate compliance with the reunification plan, that return of the minors to mother would create a substantial risk of detriment to the minors, and that reasonable services had been provided. Reunification services were therefore terminated. Pursuant to section 366.26, the juvenile court ordered a selection and implementation hearing to be held within 120 days and ordered the county adoption agency to prepare an assessment of minors.
On January 9, 1991, the section 366.26 hearing was held to determine appropriate placement for minors. At that time mother requested the juvenile court to consider returning minors to her custody based on changed circumstances. Since the last hearing, she and her live-in boyfriend had completed programs that were part of the reunification plan as to their child Bobby, who had been born during the pendency of these proceedings. Bobby had been adjudged a dependent of the juvenile court in July 1989 and had been returned to mother's custody in November 1990 upon his parents' completion of the reunification plan. After discussion, the juvenile court concluded that return to parental custody was not an option at a section 366.26 hearing. According to the court, the only options available at that hearing were whether minors were to be adopted, placed in long-term foster care, or placed under guardianship. The court noted that mother had a remedy for seeking return of the minors by filing a petition pursuant to section 388 for modification based on changed circumstances.[3]
The juvenile court then proceeded with the section 366.26 selection and implementation hearing, finding by clear and convincing evidence that *300 minors were not adoptable. Without terminating parental rights, it appointed the paternal grandparents as guardians of minors and ordered monthly visitation with mother. The juvenile court also terminated juvenile court dependency jurisdiction over the minors.[4]
Mother appealed the guardianship order and judgment. The Court of Appeal, as previously mentioned, affirmed the judgment, holding that the placement options set forth in section 366.26 are exclusive and that section 366.26 does not violate due process when read in conjunction with section 388, which adequately affords children and parents the opportunity to be heard and present new evidence.

ISSUES
Mother contends that the Court of Appeal erred in concluding that the section 366.26 hearing did not include the option of returning minors to her custody. She argues that the court had the inherent discretion to reconsider its prior order referring the case to permanency planning and to consider returning minors to mother. Mother further contends that to the extent the statutes preclude consideration of return to parental custody at the section 366.26 hearing, those provisions violate her and her children's due process rights under the federal and state Constitutions.

Scope of Section 366.26 Hearing
Section 366.26 provides in pertinent part:
"(b) At the hearing, which shall be held in juvenile court for all minors who are dependents of the juvenile court, the court, in order to provide stable, permanent homes for these minors, shall review the report as specified in Section 361.5, 366.21, or 366.22, shall indicate that the court has read *301 and considered it, shall receive other evidence that the parties present, and then shall do one of the following:
"(1) Permanently sever the parent or parents's rights and order that the child be placed for adoption.
"(2) Without permanently terminating parental rights, identify adoption as the permanent placement goal and order that efforts be made to locate an appropriate adoptive family for the minor for a period not to exceed 60 days.
"(3) Without permanently terminating parental rights, appoint a legal guardian for the minor and issue letters of guardianship.
"(4) Order that the minor be placed in long-term foster care, subject to the regular review of the juvenile court."
(1) Mother argues that section 366.26, when read in conjunction with section 366, permits consideration of return to the parents before ordering a permanent placement.[5] Section 366 provides:
"(a) The status of every dependent child in foster care shall be reviewed periodically as determined by the court but no less frequently than once every six months, as calculated from the date of the original dispositional hearing, until the hearing described in Section 366.25 or 366.26 is completed. The court shall determine the continuing necessity for and appropriateness of the placement, the extent of compliance with the case plan, and the extent of progress which has been made toward alleviating or mitigating the causes necessitating placement in foster care, and shall project a likely date by which the child may be returned to the home or placed for adoption or legal guardianship.
"(b) Subsequent to the hearing periodic reviews of each child in foster care shall be conducted pursuant to the requirements of Section 366.3 and 16503."
Section 366 was added to the Welfare and Institutions Code in 1982 as part of Senate Bill No. 14, which was enacted to bring California into *302 compliance with federal law aimed at reducing the emphasis on foster care and encouraging efforts to find permanent homes for children by either making it possible to return them to their families or by placing them in adoptive homes. (Stats. 1982, ch. 978, p. 3539; see Comment, Senate Bill 14: California Foster Drift Solutions Create New Problems for the Physically Abused Child (1984) 18 U.S.F.L.Rev. 301, 302-303.) Senate Bill No. 14 changed the emphasis from removal of children from the home to attempts to keep at-risk children within the home by requiring welfare departments to provide in-home services. The standard for removal from parental custody was changed from the best interest of the child to clear and convincing evidence of substantial danger to the physical or emotional health of the child. (§ 361.) The status of children who were removed was subject to review at least once every six months under section 366, and section 366.25 was added to require permanency planning for children who could not be returned to parental custody within twelve months. (Stats. 1982, ch. 978, § 27, 3540-3541.)
Under the 1982 legislation, section 366 was the mechanism by which dependent children obtained periodic review of their status prior to the permanency planning hearing described in section 366.25. Such reviews could also be combined with the permanency planning hearing by virtue of the express language of section 366.25, subdivision (a), which provided that the permanency planning hearing "may be combined with the six months' review as provided for in Section 366." At the permanency planning hearing the juvenile court was required to first determine whether the child could be returned to parental custody. If not, then the court was to determine whether there was a substantial probability of return within six months, and, if there were, the court was to set another permanency planning hearing within six months. (§ 366.25.) If the juvenile court determined that there was not a substantial probability of return to parental custody within six months, the court was to select one of three possible permanent plans: adoption, guardianship, or long-term foster care. If adoption were selected, a separate proceeding in the superior court had to be filed pursuant to Civil Code section 232 to implement the plan. (§ 366.25; Stats. 1982, ch. 978, § 27, pp. 3540-3541.)
The 1982 revisions still fell short of eliminating the lengthy delays that had become common in dependency cases. (See In re Micah S. (1988) 198 Cal. App.3d 557, 564 [243 Cal. Rptr. 756] (conc. opn. of Brauer, J.).) The Legislature, acknowledging the problem, convened a task force in 1986 to study existing laws and to recommend changes. Based on the work and recommendations of the task force, the Legislature passed Senate Bill No. 243 in 1987 as a comprehensive revision of laws affecting children. (Stats. *303 1987, ch. 1485, p. 5598; see Sen. Select Com. on Children & Youth/SB 1195 Task Force, Rep. on Child Abuse Reporting Laws, Juvenile Court Dependency Statutes, and Child Welfare Services (Jan. 1988) p. i [hereafter Task Force Report].)
One of the major changes effected by Senate Bill No. 243 was the replacement of the vague jurisdictional language of section 300 with 10 specific grounds for declaring a child a dependent of the juvenile court. The purpose of this change was to limit court intervention to situations in which children are threatened with serious physical or emotional harm in an effort to ensure more uniform application of the law. "SB 243 recognizes that once court intervention is determined necessary, children and parents should receive appropriate legal representation, time-limited and clearly focused protective and/or reunification services, and permanency planning at the earliest possible stage for those children who cannot live safely with their family." (Task Force Report, supra, p. ii.)
Another important change made by Senate Bill No. 243 was the modification of the procedure for terminating parental rights. Senate Bill No. 243 eliminated the need to file a separate civil action pursuant to Civil Code section 232 to terminate parental rights and provided that all termination proceedings for children who are dependents of the court are to be heard in the juvenile court as part of the regular review process. "The task force reasoned that by eliminating the need to file the separate Civil Code Section 232 action, minors who are adoptable will no longer have to wait months and often years for the opportunity to be placed with an appropriate family on a permanent basis." (Task Force Report, supra, p. 10.) As the task force explained: "Under the new provisions, a juvenile court must hold a `permanency' hearing within 120 days of the time it decides that no further reunification services shall be provided to the parents.... While the permanency hearing may be ordered following the initial dispositional hearing, pursuant to [Welfare and Institutions Code] Section 361.5(b), the six month review, pursuant to [Welfare and Institutions Code] Section 366.21(e), or the twelve month review, pursuant to [Welfare and Institutions Code] Section 366.21(g), it must be held within eighteen months of the time the minor was first removed from the parent's custody, pursuant to [Welfare and Institutions Code] Section 366.22. At the permanency hearing the court has only three options: Termination leading to adoption, guardianship, or long term foster care. The Court is to choose the disposition best for the child...." (Id. at pp. 10-11.)
Section 366.26 was enacted in 1987 as part of Senate Bill No. 243. It applies to children who are adjudged dependent on or after January 1, 1989. *304 Permanency planning for children whose adjudications were entered before that date is governed by section 366.25, which has more delay built into its provisions and which expressly incorporates reviews pursuant to section 366. A hearing pursuant to section 366.26, on the other hand, is required to be held within 120 days (4 months) of the last review hearing. (§§ 361.5, subd. (f), 366.21, subds. (e), (g), 366.22, subd. (a).) Thus, the section 366.26 hearing would be held before a six-month review hearing would be required by section 366.
Although section 366, subdivision (a) has direct application to a permanency hearing held pursuant to section 366.25, it has no such application to a section 366.26 hearing. Section 366, subdivision (a) refers to a periodic six-month review hearing the juvenile court is required to hold prior to the selection and implementation of a permanent plan. A section 366.26 hearing, however, is not a periodic status review hearing. It is a hearing specifically designed to select and implement a permanent plan for the child. At a section 366, subdivision (a) periodic status review hearing, by contrast, the court determines the continuing necessity for and appropriateness of the placement, the extent of compliance with the case plan, and the extent of progress made toward alleviating the causes that necessitated placement in foster care. The court is also required to project a likely date by which the child may be returned home or placed for adoption or legal guardianship. (§ 366, subd. (a).) The requirement of section 366, subdivision (a) that the court must project a likely date by which the child may be returned home or placed for adoption or legal guardianship is inapplicable to a section 366.26 hearing since the child's placement is selected and implemented at the section 366.26 hearing.
Section 366 may not reasonably be read as broadening the scope of a section 366.26 hearing to authorize consideration of return to parental custody as an option at that point. As we have seen, the sole purpose of the section 366.26 hearing is to select and implement one of the listed permanent plans. The issue of the return of Marilyn H. and Richard H. was addressed at the previous six-month review hearing preceding the section 366.26 hearing. At that hearing, which by statute was required to have been held before six months had elapsed, the juvenile court determined that the children could not be returned to mother's custody, terminated reunification services, and ordered that a hearing to select a permanent plan be set within one hundred twenty days. Once the reunification services had been terminated, the focus of the case shifted away from reunification to providing a permanent, stable placement for the children. (See Task Force Report, supra, p. 12.)
Mother argues that the foregoing interpretation renders meaningless the language found in section 366, subdivision (a), "until the hearing described *305 in Section 366.25 or 366.26 is completed." We do not agree. Subdivision (a) of section 366 refers to the periodic review hearings that the juvenile court is required to hold prior to selection of a permanent plan. Following selection of the permanent plan, if dependency is maintained, periodic review hearings are to be conducted pursuant to the requirements of sections 366, subdivision (b), 366.3 and 16503. (§ 366, subd. (b).) Thus, "until the hearing described in Section 366.25 or 366.26 is completed," periodic status review hearings are to be conducted pursuant to the requirements of section 366, subdivision (a).
Mother alternatively contends that section 385 provides the trial court with discretion to consider evidence at the section 366.26 hearing that a return to parental custody is appropriate. Again, we disagree. Section 385 provides: "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article." (Italics added.)
Section 385 is part of article 12 of the Welfare and Institutions Code. Article 12 pertains to the modification of juvenile court judgments and orders and includes sections 385 through section 390. Section 386 prohibits the modification of any previous order in the absence of prior notice. Section 387 requires that any change of a custody order by placing a minor into a foster home or institution may be made only after a noticed hearing upon a supplemental petition. Section 388 provides for the filing by a parent of a verified petition for modification of a juvenile court order based on changed circumstances. Section 389 provides for the sealing of juvenile court records, and section 390 for the court to dismiss the petition.
Section 385 clearly does not give the juvenile court discretion to modify its previous order in the absence of compliance with the procedural requirements set forth in article 12, which includes section 388's requirement of filing a verified petition for modification based on changed circumstances. Moreover, the wisdom of such a requirement is obvious. Once family reunification services are terminated, the welfare agency's focus shifts from monitoring the parents' progress toward reunification to determining the appropriate placement plan for the child. Accordingly, the welfare agency would not be in a position to know at the section 366.26 hearing what progress the family has made on the reunification plan. The requirement of *306 filing a petition provides the mechanism by which the welfare agency is put on notice of the need to turn its attention to such matters.[6]

Due Process
(2a) Mother contends that to the extent the dependency statutes restrict the juvenile court's dispositional options at the section 366.26 hearing, those provisions violate her and her children's due process rights. Mother claims that substantive due process requires the juvenile court to consider the option of placing the child with the parent prior to ordering guardianship or adoption pursuant to section 366.26. She argues that the vehicle of a section 388 petition to present evidence of changed circumstances is inadequate because it places the burden on the parent. The only adequate protection, according to mother, is a requirement that the court consider, at the section 366.26 hearing, the option of placing the child with the parent along with the other options listed in the statute.
(3a) The federal and state Constitutions guarantee that no state shall deprive any person of life, liberty or property without due process of law. (Adoption of Kay C. (1991) 228 Cal. App.3d 741, 747 [278 Cal. Rptr. 907].) (4) A parent's interest in the companionship, care, custody and management of his children is a compelling one, ranked among the most basic of civil rights. (In re B.G. (1974) 11 Cal.3d 679, 688 [114 Cal. Rptr. 444, 523 P.2d 244].) Likewise, natural children have a fundamental independent interest in belonging to a family unit (Adoption of Kay C., supra, 228 Cal. App.3d at p. 749), and they have compelling rights to be protected from abuse and neglect and to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child. (In re David B. (1979) 91 Cal. App.3d 184, 192-193, 195 [154 Cal. Rptr. 63].) The interests of the parent and the child, therefore, must be balanced.
(3b) Substantive due process prohibits governmental interference with a person's fundamental right to life, liberty or property by unreasonable or arbitrary legislation. (In re David B., supra, 91 Cal. App.3d at p. 192.) In substantive due process law, deprivation of a right is supportable only if the conduct from which the deprivation flows is prescribed by reasonable legislation that is reasonably applied; that is, the law must have a reasonable *307 and substantial relation to the object sought to be attained. (Gray v. Whitmore (1971) 17 Cal. App.3d 1, 21 [94 Cal. Rptr. 904].)
The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time. (§§ 300, subd. (j), 361.5, 366.26, subd. (b); Task Force Report, supra, at pp. 1-2, 7, 10.) (5) Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect. (In re David B., supra, 91 Cal. App.3d at pp. 192-193, 195, Stanley v. Illinois (1972) 405 U.S. 645, 649 [31 L.Ed.2d 551, 557, 92 S.Ct. 1208].) The Legislature has declared that California has an interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with their parents have been unsuccessful. (§§ 366.25, subd. (a), 366.26, subd. (b); In re Heather P. (1989) 209 Cal. App.3d 886; 892 [257 Cal. Rptr. 545].) (2b) This interest is a compelling one. (In re Heather P., supra, 209 Cal. App.3d at p. 892.) The state's interest requires the court to concentrate its efforts, once reunification services have been terminated, on the child's placement and well-being, rather than on a parent's challenge to a custody order. Requiring the parent to petition the court to hear a challenge to a custody order after reunification services have been terminated does not violate substantive due process.
In evaluating whether a parent is denied due process by limiting the issues at a section 366.26 hearing, it is important to examine the entire statutory scheme. The requirement of petitioning the court for a hearing pursuant to section 388 to show changed circumstances must be viewed in the context of the dependency proceedings as a whole. (Cynthia D. v. Superior Court, ante, pp. 242, 253 [19 Cal. Rptr.2d 698, 851 P.2d 1307].) Dependency proceedings are proceedings of an ongoing nature. While different hearings within the dependency process have different standards and purposes, they are part of an overall process and ongoing case. (6) One section of the dependency law may not be considered in a vacuum. It must be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal. Rptr. 67, 743 P.2d 1323].) (2c) The dependency scheme, when viewed as a whole, provides the parent due process and fundamental fairness while also accommodating the child's right to stability and permanency.
Significant safeguards have been built into the current dependency scheme. They include representation by counsel to assist parents at every *308 stage of the proceedings (§ 317), notice of all hearings and rights (§§ 307.4, 308, 311, 316, 335-336, 364-366.23), clear and convincing evidence for removal from custody (§ 361, subd. (b)), reunification services (§ 361.5), and review hearings at which services and progress are reviewed (§§ 366.21, 366.22).
The Legislature has recognized that a parent who has a child removed for neglect, abuse or substantial risk thereof, in most cases should be provided with services to assist the parent in overcoming the problems that led to removal. (§ 361.5.) It has also recognized that, in order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate. (Ibid.; see also In re Micah S., supra, 198 Cal. App.3d at pp. 564-568 (conc. opn. of Brauer, J.).) To avoid unnecessary delays in the process the Legislature has directed the juvenile court to "give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a).)
Under the current dependency scheme, except in limited circumstances, a parent is entitled to 12 months of reunification services, with a possibility of 6 additional months, when a child is removed from a parent's custody. (§ 361.5.) The juvenile court must review the case at least once every six months. (§ 366.) At the dispositional hearing, and at each review hearing prior to permanency planning, there is a statutory presumption that the child will be returned to parental custody. At the dispositional hearing, the burden is on the state to prove, by clear and convincing evidence, that removal of the child from the parent's custody is necessary. At 6-, 12-, and 18-month review hearings the juvenile court must return the child to the custody of the parent unless it determines, by a preponderance of the evidence, that return of the child would create a substantial risk of detriment to the child's physical or emotional well-being. (§§ 361, subd. (b), 366.21, subds. (e) & (f), 366.22, subd. (a).) At the review hearings the state must also present evidence that reasonable reunification services have been provided to the parent. (Ibid.) If the child may not safely be returned to the parents within a maximum of 18 months from removal, the court must develop a permanent plan for the child. Prior to terminating reunification services, the court must make a determination that it would be detrimental to the child to be returned to the parent's custody. (§§ 366.21, subd. (f), 366.22, subd. (a).)
In between the normal review hearings the parent has the assistance of both a social worker and an attorney. In addition, throughout the reunification period and thereafter, the parent has the continuing right to petition the *309 court for a modification of any of its orders based upon changed circumstances or new evidence pursuant to section 388.
Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability. A hearing pursuant to section 366.26 to select and implement a permanent plan for the children is to be heard within 120 days from the time it was set. (§§ 361.5, subd. (f), 366.21, subds. (e) & (g), 366.22, subd. (a).) The court need not continue to consider the issue of reunification at the section 366.26 hearing. The burden thereafter is on the parent to prove changed circumstances pursuant to section 388 to revive the reunification issue. Section 388 provides the "escape mechanism" that mother maintains must be built into the process to allow the court to consider new information.
Sections 366.26 and 388, when construed together and with the legislative scheme as a whole, are reasonable and bear a substantial relation to the objective sought to be attained. The parent's interest in having an opportunity to reunify with the child is balanced against the child's need for a stable, permanent home. The parent is given a reasonable period of time to reunify and, if unsuccessful, the child's interest in permanency and stability takes priority. Even after the focus has shifted from reunification, the scheme provides a means for the court to address a legitimate change of circumstances while protecting the child's need for prompt resolution of his custody status. Thus, both substantive and procedural due process are satisfied.
Mother also claims that when a trial court, applying the statutory limit of 18 months on reunification efforts, terminates reunification services and sets a section 366.26 hearing, it thereby establishes an irrefutable presumption of parental unfitness, which is then applied at the section 366.26 hearing. On the contrary, the Legislature has provided the procedure pursuant to section 388 to accommodate the possibility that circumstances may change after the reunification period that may justify a change in a prior reunification order. A petition pursuant to section 388 may be used to raise the issue in the trial court prior to the section 366.26 hearing. This procedure provides notice to the parties and an opportunity for hearing if the statutory requirements are met. (§ 388.)
Shifting the burden to the parent to file a petition based on a showing of change in circumstance is not unduly burdensome. Such petitions are to be liberally construed in favor of granting a hearing to consider the parent's request. (Cal. Rules of Court, rule 1432(a); In re Jeremy W. (1992) 3 Cal. App.4th 1407, 1413-1414 [5 Cal. Rptr.2d 148]; In re Heather P., supra, *310 209 Cal. App.3d at p. 891.) The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing. (In re Jeremy W., supra, 3 Cal. App.4th at p. 1416.)
Thus, it is clear that no irrefutable presumption is created by the statutory scheme. The presumption that arises after termination of reunification services is a rebuttable one. It is presumed, at that point, that continued care is in the best interest of the child. The parent, however, may rebut that presumption by showing that circumstances have changed that would warrant further consideration of reunification.
It must be remembered that up until the time the section 366.26 hearing is set, the parent's interest in reunification is given precedence over the child's need for stability and permanency. This could be for a period as long as 18 months. Another four months may pass before the section 366.26 hearing is held. While this may not seem a long period of time to an adult, it can be a lifetime to a young child. Childhood does not wait for the parent to become adequate. (See In re Micah S., supra, 198 Cal. App.3d at pp. 564-568 (conc. opn. of Brauer, J.).) Without the statutory procedures and safeguards created by the Legislature there would be nothing to preclude a parent from appearing at a section 366.26 hearing and, without prior notice to the court and other parties, assert a meritless claim of changed circumstances necessitating a delay of the hearing to allow the court to determine whether there is sufficient evidence to hold a hearing on the issue and to allow the other parties time to respond. After resolution of the issue raised, another such claim conceivably could be raised at the next section 366.26 hearing. This could result in lengthy and unnecessary delay in providing permanency for children, the very evil the Legislature intended to correct. The Legislature, therefore, has provided safeguards, through section 388, that require more than a last-minute oral attempt by a parent to delay permanency for a child who has already spent as much as 22 months in out-of-home placement.
Contrary to mother's argument, section 366.26 is not violative of due process merely because the juvenile court's dispositional options do not include return to parental custody. When viewed in conjunction with section 388, it is clear that the Legislature has provided the parent an adequate opportunity to show current evidence of changed circumstances and has given the court the chance to consider it prior to the section 366.26 hearing without unnecessarily disrupting the focus and efforts of the court to establish permanency for the child. The interests of the parent and the child are thereby balanced through a scheme that is fundamentally fair and provides due process.

*311 CONCLUSION
The judgment of the Court of Appeal is affirmed.
Lucas, C.J., Mosk, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.
NOTES
[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.
[2] The section 366.26 selection and implementation hearing is also referred to as a permanency planning hearing.
[3] Mother's counsel gave no explanation for the failure to have filed a petition pursuant to section 388. Her counsel nevertheless sought to have the court waive the notice requirements of section 388 and consolidate such a motion with the section 366.26 hearing. Opposing counsel objected, noting that she was not prepared to go forward on a section 388 motion because she did not have the appropriate witnesses to testify about the fitness of mother's home. She also objected to a request for a continuance to permit the filing of a section 388 petition. The court ruled that the hearing would go forward and would be limited to the placement options pursuant to section 366.26. The record indicates that the court realized it had discretion to continue the hearing to allow a section 388 petition to be heard, and that the court acted well within its discretion in failing to do so.
[4] The record suggests that the court and the parties were under the misapprehension that the juvenile court would no longer have jurisdiction over the minors once it terminated dependency jurisdiction. Section 366.4, however, provides: "Any minor for whom a guardianship has been established resulting from the selection or implementation of a permanent plan pursuant to Section 366.25 or 366.26 is within the jurisdiction of the juvenile court. For those minors, Part 2 (commencing with Section 1500) of Division 4 of the Probate Code, relating to guardianship, shall not apply...." Thus, even though the juvenile court terminated dependency jurisdiction in the case, the juvenile court still retained jurisdiction over the guardianship, and any motions relating to that guardianship would properly be filed in the juvenile court.
[5] Mother did not rely specifically on the language of section 366 until her petition for rehearing in the Court of Appeal. Because the point is integrally related to the principal issue presented by the appeal  i.e., the proper interpretation of section 366.26  and the issue has been fully briefed before this court, we deem it appropriate, under these limited circumstances, to consider the merits of this argument in determining whether the lower courts correctly construed and applied section 366.26. (See, e.g., Wong v. DiGrazia (1963) 60 Cal.2d 525, 532, fn. 9, [35 Cal. Rptr. 241, 386 P.2d 817].)
[6] Appointed counsel for minors supports mother's position and further asserts that section 366.3 implies that return to the parents may be considered as an option at the section 366.26 hearing. We are unpersuaded. Section 366.3 governs the procedure to be followed after a permanent placement has been implemented and a change in status thereafter occurs, such as termination of the legal guardianship. Accordingly, its procedures are not instructive with respect to the present situation.