93 Cal.Rptr.2d 644 (2000)
78 Cal.App.4th 1339
In re JASMINE D., a Person Coming Under the Juvenile Court Law.
Alameda County Social Services Agency, Plaintiff and Respondent,
v.
Tammy D. et al., Defendants and Appellants.
No. A086822.
Court of Appeal, First District, Division Three.
March 14, 2000.
Rehearing Denied April 11, 2000.
Review Denied June 14, 2000.
*646 Mara Carman, Alameda, under appointment by the Court of Appeal, for Appellant.
Richard E. Winnie, County Counsel in and for the County of Alameda;. Anthony E. Scarr, Deputy County Counsel, for Respondent.
*645 PARRILLI, J.
Here we consider an issue that often arises when a juvenile dependency proceeding reaches the stage at which a permanent plan must be selected for an adoptable child. If a parent has maintained a good relationship with the child through visitation, is that a reason to select a plan less permanent than adoption? This court has interpreted a former statute governing permanency planning as requiring the juvenile court to find the child would not benefit from continuing the parental relationship before it orders the termination of parental rights and places the child for adoption. (In re Cory M. (1992) 2 Cal.App.4th 935, 951, 3 Cal.Rptr.2d 627 (Cory M.).) In this case, we explain that Cory M. does not apply under the current statutory scheme. We join other Courts of Appeal in holding that the juvenile court must balance the benefits to be gained from a permanent home with adoptive parents against the benefit of a continuing parental relationship. We take a slightly different view on the governing standard of review than other courts, which have applied the substantial evidence test. We conclude that abuse of discretion is the appropriate standard.
If the child is likely to be adopted, the Welfare and Institutions Code directs the court to terminate parental rights and order the child placed for adoption. (Welf. & Inst.Code, § 366.26, subd. (c)(1).)[1] The court's previous orders keeping the child out of parental custody and terminating reunification services are "a sufficient basis for termination of parental rights unless the court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: ¶ (A) The parents ... have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship...." (Ibid.)[2] If the court finds that termination of parental rights is not in the child's best interest, adoption is no longer an option and the court must consider first legal *647 guardianship, then long-term foster care as alternate permanent plans. (§ 366.26, subd. (c)(4).)
Tammy and Kenneth D. appeal from an order terminating their parental rights and finding their daughter Jasmine likely to be adopted. They contend the juvenile court should have found that Tammy's regular visitation and contact with Jasmine justified the preservation of her parental rights under section 366.26, subdivision (c)(1)(A). We conclude the court properly applied the statute and freed Jasmine for adoption.[3]

DISCUSSION

1. The Findings Below

In its ruling from the bench, the court recognized Tammy had been consistent in her visitation with Jasmine, who was three years old at the time of the hearing. However, Tammy never progressed from supervised to unsupervised visits, which the court considered a significant failure. The court acknowledged, though, that "by the definition that we have from the child welfare worker here of what is a parental relationship and what would be the indicia in a visiting context the mother has exhibited many if not all of those qualities. ¶ She has been nurturing and has provided for the child's needs to be taken care of, and feeding and guidance and discipline. However, this Court does not believe that it has adequate evidence to conclude that in addition to those overall positive visits and the connection between the mother and the minor which leads the minor to call her mom that there is, in fact, the type of relationship here between the mother and the minor which would outweigh this child's right to have a stable home. ¶ This child has ... been within the custody of the court within a few days of two years. During that time ... the mother has had at all times ... available to her the possibility of unsupervised visits and of reuniting with her child and has not done so."
The court observed that other than being regular in her visitation, Tammy had complied with none of the requirements of her reunification plan. Services had been terminated after Tammy failed to participate in drug treatment or to obtain housing, despite referrals provided by the social worker. Tammy was homeless, except when she stayed with her father-in-law. She had no employment or other resources to meet Jasmine's needs. Her appearance during visits with Jasmine and with the social worker had led the worker to believe she was still using drugs. The court concluded: "I can't find that there has been ... the type of relationship between the mother and her daughter Jasmine that would overcome the minor's right to have permanency. ¶ By law, the Court must find that the most permanent plan is, in fact, adoption. The preliminary finding having already been made by this Court the only issue before it really is whether the evidence presented rises to the level of ... satisfying the requirements for an exception, and I don't find that the evidence presented is persuasive enough that there is, in fact, a parental relationship between the mother and the minor Jasmine such that to terminate this supervised visitation would, in fact, be detrimental to the minor."
The court added: "I find that the mother certainly has a special relationship with Jasmine, that the mother's relationship is the equivalent of a known family member like that of an aunt, of someone who is special, perhaps even a closer family member than an aunt. This is not a parental relationship."

2. Tammy's Claims on Appeal

Tammy recognizes the court followed the guidelines established by In re Autumn *648 H. (1994) 27 Cal.App.4th 567, 575, 32 Cal.Rptr.2d 535 (Autumn H.), and In re Beatrice M. (1994) 29 Cal.App.4th 1411, 1418-1419, 35 Cal.Rptr.2d 162 (Beatrice M.). The Autumn H. court noted that "[interaction between natural parent and child will always confer some incidental benefit to the child." The court decided the exception created by section 366.26, subdivision (c)(1)(A) applies only when the relationship with a natural parent "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (Autumn H., supra, 27 Cal.App.4th at p. 575, 32 Cal. Rptr.2d 535.) The Beatrice M. court agreed with that analysis, and held that parents'"frequent and loving contact" with their children was not enough to establish the necessary benefit from continuing the relationship, when the parents "had not occupied a parental role in relation to them at any time during their lives." (Beatrice M., supra, 29 Cal.App.4th at pp. 1418-1419, 35 Cal.Rptr.2d 162.)
Tammy argues these cases go far beyond the statutory provision for a finding that termination of parental rights would be detrimental to the child due to the benefit conferred by a continued relationship with the parent. She points out that in Cory M., we required the juvenile court to find the minor would not benefit from continuing the parental relationship before proceeding to terminate parental rights. (Cory M., supra, 2 Cal.App.4th at p. 951, 3 Cal.Rptr.2d 627.) We recognized the legislative preference for adoption as a permanent plan, but did not discuss the benefits of adoption as a factor to be weighed against the benefit of a relationship with a natural parent. (Id. at p. 952, 3 Cal. Rptr.2d 627.) We take this opportunity to revisit Cory M.'s holding in light of subsequent developments in dependency law.

3. Cory M.

Cory M. was decided under former section 366.25, which governed permanency planning hearings for children declared dependents of the juvenile court prior to January 1, 1989. (See In re Marilyn H. (1993) 5 Cal.4th 295, 303-304, 19 Cal. Rptr.2d 544, 851 P.2d 826 (Marilyn H.).) Under former section 366.25, the permanency planning hearing could be combined with a periodic six-month review hearing. "At the permanency planning hearing the juvenile court was required to first determine whether the child could be returned to parental custody. If not, then the court was to determine whether there was a substantial probability of return within six months, and, if there were, the court was to set another permanency planning hearing within six months. (§ 366.25.) If the juvenile court determined that there was not a substantial probability of return to parental custody within six months, the court was to select one of three possible permanent plans: adoption, guardianship, or long-term foster care. If adoption were selected, a separate proceeding in the superior court had to be filed pursuant to Civil Code section 232 to implement the plan. (§ 366.25; Stats.1982, ch. 978, § 27, pp. 3540-3541.)" (Marilyn H., supra, 5 Cal.4th at p. 302, 19 Cal.Rptr.2d 544, 851 P.2d 826.)
In terms similar to section 366.26, subdivision (c)(1), former section 366.25, subdivision (d)(1) provided: "If the court finds that it is likely that the minor can or will be adopted, the court shall authorize the appropriate county or state agency to proceed to free the minor from the custody and control of his or her parents or guardians pursuant to Section 232 of the Civil Code unless the court finds that any of the following conditions exist: [¶] (A) The parents or guardians have maintained regular visitation and contact with the minor and the minor would benefit from continuing this relationship...." (Cory M., supra, 2 Cal.App.4th at p. 950, 3 Cal.Rptr.2d 627.) In Cory M., we noted that California Rules of Court, rule 1462(a)(3) restated this provision in positive terms: "the court shall determine whether it is likely that the *649 child can or will be adopted and, if it so finds, the court shall determine whether one or more of the following conditions exist: [¶] (A) The parent or guardian has maintained regular visitation and contact with the child and the child would benefit from continuing the relationship. [¶] ... [¶] If the court finds that none of the conditions exists, the court shall authorize the initiation of proceedings under Civil Code section 232." (Cory M., supra, 2 Cal.App.4th at p. 951, 3 Cal.Rptr.2d 627.) Reading the rule and the statute together, we concluded: "Implicitly, before authorizing termination of parental rights, the court must find that the minor would not benefit from continuing the parental relationship." (Ibid.)
While the exception provided in former section 366.25, subdivision (d)(1)(A) was continued in section 366.26, subdivision (c)(1)(A), the legislation including section 366.26 made major changes in the statutory scheme. To address the problem of lengthy delays in dependency proceedings, particularly when adoption was selected as the permanent plan, the Legislature comprehensively revised the dependency statutes based on recommendations by a task force of experts. The legislation "substantially changed the procedure for permanently severing parental rights in cases where the child is a dependent of the court. It eliminated the need to file a separate Civil Code section 232 proceeding and brought termination of parental rights for dependent children within the dependency process through a selection and implementation hearing pursuant to section 366.26. The task force reasoned that by eliminating the need for a separate action, 'minors who are adoptable will no longer have to wait months and often years for the opportunity to be placed with an appropriate family on a permanent basis.'" (In re Cynthia D. (1993) 5 Cal.4th 242, 247, 19 Cal.Rptr.2d 698, 851 P.2d 1307 (Cynthia D.), citation omitted; see also Marilyn H., supra, 5 Cal.4th at p. 303, 19 Cal.Rptr.2d 544, 851 P.2d 826; In re Lorenzo C. (1997) 54 Cal.App.4th 1330, 1340, 63 Cal.Rptr.2d 562 (Lorenzo C.).)
Unlike former section 366.25, section 366.26 specified that if an adoptable child had not been returned to parental custody during the period when reunification services were available, this circumstance in itself is "a sufficient basis for termination of parental rights unless the court finds that termination would be detrimental...." Our Supreme Court has read this provision to mean that "in order to terminate parental rights, the court need only make two findings: (1) that there is clear and convincing evidence that the minor will be adopted; and (2) that there has been a previous determination that reunification services shall be terminated." (Cynthia D., supra, 5 Cal.4th at pp. 249-250, 19 Cal.Rptr.2d 698, 851 P.2d 1307; accord, In re Matthew C. (1993) 6 Cal.4th 386, 392, 24 Cal.Rptr.2d 765, 862 P.2d 765.) Under the new statutes, the critical decision on parental rights is made at the dispositional or review hearing, when the court may decide the minor cannot be returned home and reunification efforts should not be pursued. In such cases, the decision to terminate parental rights at the section 366.26 hearing is "relatively automatic" if the child is going to be adopted. (Cynthia D., supra, 5 Cal.4th at p. 250, 19 Cal.Rptr.2d 698, 851 P.2d 1307; In re Matthew C., supra, 6 Cal.4th at p. 392, 24 Cal.Rptr.2d 765, 862 P.2d 765; In re Zacharia D. (1993) 6 Cal.4th 435, 447, 24 Cal.Rptr.2d 751, 862 P.2d 751.)
It is clear that the statutory revisions including section 366.26 swept away the requirement we identified in Cory M. for a finding of no benefit from a continuing parental relationship before a parent's rights can be terminated. Moreover, the rule of court governing selection of a permanent plan now mirrors the statutory language, instead of stating a positive requirement for such a finding. (Cal. Rules of Court, rule 1463(d)(1).) It is of course proper for the juvenile court to respond to a parent's request for a finding on the *650 exception provided in section 366.26, subdivision (c)(1)(A), as the court did in this case.[4] But a finding of no detriment is not a prerequisite to the termination of parental rights.

4. The Governing Standards

We turn now to Tammy's contention that the Autumn H. and Beatrice M. courts applied an "overbroad statutory construction" to section 366.26, subdivision (c)(1)(A) by requiring the benefit of a continuing relationship with a parent to be balanced against the benefits of adoptive placement, and by ruling that the parent must stand in a "parental" role for the exception to apply. We disagree. Autumn H. has been widely followed by the Courts of Appeal, and both decisions are consistent with the statutory scheme and its interpretation by our Supreme Court.
By the time of a section 366.26 hearing, the parent's interest in reunification is no longer an issue and the child's interest in a stable and permanent placement is paramount. (Marilyn H., supra, 5 Cal.4th at p. 309, 19 Cal.Rptr.2d 544, 851 P.2d 826; In re Richard C. (1998) 68 Cal. App.4th 1191, 1195-1196, 80 Cal.Rptr.2d 887.) "In light of the earlier judicial determinations that reunification cannot be effectuated, it becomes inimical to the interests of the minor to heavily burden efforts to place the child in a permanent alternative home." (Cynthia D., supra, 5 Cal.4th at p. 256, 19 Cal.Rptr.2d 698, 851 P.2d 1307.) The child has a compelling right "to [have] a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child." (Marilyn H., supra, 5 Cal.4th at p. 306, 19 Cal.Rptr.2d 544, 851 P.2d 826.) Adoption is the Legislature's first choice because it gives the child the best chance at such a commitment from a responsible caretaker. (Lorenzo C., supra, 54 Cal.App.4th at p. 1344, 63 Cal.Rptr.2d 562; Beatrice M., supra, 29 Cal.App.4th at p. 1419, 35 Cal.Rptr.2d 162; Jones T. v. Superior Court (1989) 215 Cal.App.3d 240, 251, 264 Cal.Rptr. 4.)
The exception provided in section 366.26, subdivision (c)(1)(A) must be considered in view of the legislative preference for adoption when reunification efforts have failed. (Marilyn H., supra, 5 Cal.4th at p. 307, 19 Cal.Rptr.2d 544, 851 P.2d 826 [provisions of dependency statutes "may not be considered in a vacuum," but must be "construed with reference to the whole system of law"].) So viewed, the exception does not permit a parent who has failed to reunify with an adoptable child to derail an adoption merely by showing the child would derive some benefit from continuing a relationship maintained during periods of visitation with the parent. The section 366.26, subdivision (c)(1)(A) exception is not a mechanism for the parent to escape the consequences of having failed to reunify. That opportunity is provided by section 388, which permits a parent to petition for reconsideration of the reunification issue based on a finding of changed circumstances. (Marilyn H., supra, 5 Cal.4th at p. 309, 19 Cal.Rptr.2d 544, 851 P.2d 826.)
Construing sections 366.26 and 388 together and in the context of the statutory scheme, the Marilyn H. court stated "[t]he parent's interest in having an opportunity to reunify with the child is balanced against the child's need for a stable, permanent home." (5 Cal.4th at p. 309, 19 Cal.Rptr.2d 544, 851 P.2d 826.) A similar balancing determination is obviously appropriate in deciding whether a child would be so harmed by terminating a relationship with a natural parent that an adoption should not go forward and the permanent plan should be diverted to guardianship or foster care. The Legislature *651 has declared that in the ordinary case, a parent's failure to reunify and the termination of reunification services at a prior hearing are a sufficient basis for terminating parental rights. (§ 366.26, subd. (c)(1).)
"The Autumn H. standard reflects the legislative intent that adoption should be ordered unless exceptional circumstances exist, one of those exceptional circumstances being the existence of such a strong and beneficial parent-child relationship that terminating parental rights would be detrimental to the child and outweighs the child's need for a stable and permanent home that would come with adoption." (In re Casey D. (1999) 70 Cal. App.4th 38, 51, 82 Cal.Rptr.2d 426 (Casey D.).) The Legislature emphasized the exceptional nature of all the circumstances identified in section 366.26, subdivision (c)(1) by revising the statute in 1998 to require the court to find not only that one of the listed circumstances exists, but also that it provide "a compelling reason for determining that termination would be detrimental to the child." (Stats.1998, ch. 1054, § 36.6.) This amendment, which was effective at the section 366.26 hearing in this case, makes it plain that a parent may not claim entitlement to the exception provided by subdivision (c)(1)(A) simply by demonstrating some benefit to the child from a continued relationship with the parent, or some detriment from termination of parental rights.
In Casey D., the Autumn H. court (Fourth District, Division One) noted the other Courts of Appeal that have adopted the Autumn H. standard. (70 Cal.App.4th at p. 51, 82 Cal.Rptr.2d 426.) Since the publication of Casey D., other courts have followed. (In re Brandon C. (1999) 71 Cal.App.4th 1530, 1534, 84 Cal.Rptr.2d 505 [Second Dist., Div. Four]; In re Derek W. (1999) 73 Cal.App.4th 823, 827, 86 Cal. Rptr.2d 739 [Second Dist., Div. Six] (Derek W.); In re Andrea R. (1999) 75 Cal. App.4th 1093, 1109, 89 Cal.Rptr.2d 664 [Second Dist., Div. Seven] (Andrea R.).) We are in accord.
Tammy notes that whereas Autumn H. suggested the kind of relationship meeting the requirements of the exception "arises from day-to-day interaction, companionship, and shared experiences," the court clarified and broadened its view in Casey D.: "Another way of stating the beneficial parent-child concept described in Autumn H. is: a relationship characteristically arising from day-to-day interaction, companionship and shared experiences. Day-to-day contact is not necessarily required, although it is typical in a parent-child relationship. A strong and beneficial parent-child relationship might exist such that termination of parental rights would be detrimental to the child, particularly in the case of an older child, despite a lack of day-to-day contact and interaction." (Case D., supra, 70 Cal.App.4th at p. 51, 82 Cal.Rptr.2d 426.)
We observe that the same court has recently characterized the nature of the determination required under section 366.26, subdivision (c)(1)(A) in an even more flexible way, which we believe is most appropriate: "The balancing of competing considerations must be performed on a case-by-case basis and take into account many variables, including the age of the child, the portion of the child's life spent in the parent's custody, the `positive' or `negative' effect of interaction between parent and child, and the child's particular needs. (Citation.) When the benefits from a stable and permanent home provided by adoption outweigh the benefits from a continued parent/child relationship, the court should order adoption." (In re Zachary G. (1999) 77 Cal.App.4th 799, 811, 92 Cal.Rptr.2d 20.) Parent-child relationships do not necessarily conform to a particular pattern. The juvenile court should be concerned not with finding a certain type of parental relationship but with the interests of the particular child or children before it, and whether there is a compelling reason not to terminate parental rights.
*652 We do agree, however, with the implication in Beatrice M. that a parental relationship is necessary for the exception to apply, not merely a friendly or familiar one. (Beatrice M., supra, 29 Cal.App.4th at pp. 1418-1419, 35 Cal.Rptr.2d 162; accord, In re Elizabeth M. (1997) 52 Cal. App.4th 318, 324, 60 Cal.Rptr.2d 557; Derek W., supra, 73 Cal.App.4th at p. 827, 86 Cal.Rptr.2d 739; Andrea R., supra, 75 Cal.App.4th at p. 1108, 89 Cal.Rptr.2d 664.) "While friendships are important, a child needs at least one parent. Where a biological parent ... is incapable of functioning in that role, the child should be given every opportunity to bond with an individual who will assume the role of a parent." (In re Brittany C. (1999) 76 Cal. App.4th 847, 854, 90 Cal.Rptr.2d 737.) Thus, a child should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree but does not meet the child's need for a parent. It would make no sense to forgo adoption in order to preserve parental rights in the absence of a real parental relationship.
To sum up, when the court has not returned an adoptable child to the parent's custody and has terminated reunification services, adoption becomes the presumptive permanent plan and parental rights should ordinarily be terminated at the section 366.26 hearing. The parent has the burden of proving that termination would be detrimental to the child under section 366.26, subdivision (c)(1)(A). (Derek W., supra, 73 Cal.App.4th at pp. 826-827, 86 Cal.Rptr.2d 739; Lorenzo C., supra, 54 Cal.App.4th at pp. 1343-1345, 63 Cal.Rptr.2d 562.) The juvenile court may reject the parent's claim simply by finding that the relationship maintained during visitation does not benefit the child significantly enough to outweigh the strong preference for adoption. The court must make a more substantial and affirmative finding if it decides to apply the exception and preserve parental rights. It must "state its reasons in writing or on the record," and those reasons must be "compelling." (§ 366.26, subd. (c)(1).) Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement.

5. Standard of Review

We arrive last at what is usually the starting point the standard of review. A look at the cases cited in the preceding section of this opinion will disclose that courts subscribing to the Autumn H. standard have routinely applied the substantial evidence test to the juvenile court's finding under section 366.26, subdivision (c)(1)(A). We conclude the abuse of discretion standard is in order. The juvenile court is determining which kind of custody is appropriate for the child. Such a decision is typically reviewable for abuse of discretion. (In re Stephanie M. (1994) 7 Cal.4th 295, 318, 27 Cal.Rptr.2d 595, 867 P.2d 706 (Stephanie M.); In re Tamneisha S. (1997) 58 Cal.App.4th 798, 806, 68 Cal. Rptr.2d 259; In re Robert L. (1993) 21 Cal.App.4th 1057, 1067, 24 Cal.Rptr.2d 654 (Robert L.).) "[W]hen a court has made a custody determination in a dependency proceeding, a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.... The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (Stephanie M., supra, 7 Cal.4th at pp. 318-319, 27 Cal.Rptr.2d 595, 867 P.2d 706, citations and internal quotations omitted.)
The practical differences between the two standards of review are not significant. "[Evaluating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. *653 Broad deference must be shown to the trial judge. The reviewing court should interfere only if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." (Robert L., supra, 21 Cal.App.4th at p. 1067, 24 Cal.Rptr.2d 654, citations and internal quotations omitted; see also id. at pp. 1065-1066, 24 Cal.Rptr.2d 654; Hurtado v. Statewide Home Loan Co. (1985) 167 Cal.App.3d 1019, 1024-1025, 213 Cal.Rptr. 712, disapproved on other grounds by Shamblin v. Brattain (1988) 44 Cal.3d 474, 479, fn. 4, 243 Cal.Rptr. 902, 749 P.2d 339.) However, the abuse of discretion standard is not only traditional for custody determinations, but it also seems a better fit in cases like this one, especially since the statute now requires the juvenile court to find a "compelling reason for determining that termination would be detrimental to the child." (§ 366.26, subd. (c)(1).) That is a quintessentially discretionary determination. The juvenile court's opportunity to observe the witnesses and generally get "the feel of the case" warrants a high degree of appellate court deference. (See Hurtado v. Statewide Home Loan Co., supra, 167 Cal. App.3d at p. 1024, 213 Cal.Rptr. 712.)
It requires little discussion to conclude the court did not abuse its discretion in this case. The benefit of a stable, permanent adoptive home for Jasmine clearly outweighed the benefit of a continued relationship with Tammy, who despite her successful visitation record had made no steps toward overcoming the problems leading to Jasmine's dependency on the juvenile court. The social worker reported: "Jasmine has lived with the prospective adoptive parents for four months and has adjusted well to the family. She calls the prospective adoptive parents `mommy' and `daddy.' She is particularly close to the 10 year old son. When asked about Jasmine's transition into the family, the prospective adoptive mother stated, `it's like she's always been here.'" This is not the extraordinary case where an adoption should have been foreclosed by the exception provided in section 366.26, subdivision (c)(1)(A).

DISPOSITION
The order is affirmed.
CORRIGAN, Acting P.J., and WALKER, J., concur.
NOTES
[1] Further statutory references are to the Welfare and Institutions Code.
[2] None of the other exceptions is at issue here. They arise when:

"(B) A child 12 years of age or older objects to termination of parental rights.
"(C) The child is placed in a residential treatment facility, adoption is unlikely or undesirable, and continuation of parental rights will not prevent finding the child a permanent family placement if the parents cannot resume custody when residential care is no longer needed.
"(D) The child is living with a relative or foster parent who is unable or unwilling to adopt the child because of exceptional circumstances, that do not include an unwillingness to accept legal or financial responsibility for the child, but who is willing and capable of providing the child with a stable and permanent environment and the removal of the child from the physical custody of his or her relative or foster parent would be detrimental to the emotional well-being of the child. This subparagraph does not apply to any child who is living with a nonrelative and who is either (i) under six years of age or (ii) a member of a sibling group where at least one child is under six years of age and the siblings are, or should be, permanently placed together." (§ 366.26, subd. (c)(1).)
[3] Kenneth joined in Tammy's briefing but filed no brief of his own. His standing to complain about the termination of his wife's parental rights is questionable, to say the least. (See, e.g., In re Jasmine J. (1996) 46 Cal.App.4th 1802, 1806-1807, 54 Cal.Rptr.2d 560.) But in any event, no arguments regarding Kenneth's rights are before us, and since we affirm we need not consider whether he is separately entitled to relief.
[4] An express finding is required by statute only when the court finds that terminating parental rights would be detrimental to the child. (§ 366.26, subd. (c)(1), final par.; see In re Jesse B. (1992) 8 Cal.App.4th 845, 851, 10 Cal.Rptr.2d 516 [absent contrary indication in record, finding of no detriment is implied from entry of termination order].)