Filed 9/2/15  In re Hannah P. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re HANNAH P., et al., a Person Coming Under the Juvenile Court Law. | |
| SOLANO COUNTY HEALTH & SOCIAL SERVICES DEPARTMENT,  Plaintiff and Respondent,  v.  MEGAN I.,  Defendant and Appellant. | A144363  (Solano County Super. Ct. No. J42376, J42377) |

In this dependency proceeding, Megan I. (Mother) appeals from the juvenile court's order terminating her parental rights to Hannah P., born in December 2004, and Jacob I., born in May 2011 (Minors).  We affirm.

BACKGROUND

The Minors were detained in August 2012.  Mother was dirty and barefoot and had open sores all over her arms and legs; the Minors were dirty and had not eaten in two days.  Mother said she had recently returned to California after Jacob's father beat her up and was arrested.  Mother eventually admitted to being addicted to methamphetamines.

1

Welfare and Institutions Code section 300 petitions were filed,[1] alleging that the Minors were dirty and not being properly cared for, that both Mother and Jacob's father had untreated substance abuse issues,[2] that Mother had untreated mental health issues and a history of engaging in "violent intimate partner relationships," and that the family had a history of moving from place to place "to avoid law enforcement and government authorities." In November, the juvenile court sustained the section 300 petitions (with some amendments).

Although there were some difficulties and setbacks, Mother complied with her case plan and was testing negative for drugs, and the Minors were returned to her care in December 2013.[3] Mother was living in Vacaville with the father of another of her children, who is not involved in the present proceedings. In June 2014, Mother, the Minors, and Jacob's father moved to a motel in Fairfield. That same month, during an unannounced home visit, Mother was found with open sores on her body, and she admitted to using methamphetamine the day before. The Department crafted a safety plan, but the Minors were not detained.

On July 16, 2014, Jacob's father advised the Department that Mother had kicked him and the Minors out of the motel room. Hannah reported Mother yelled in her face and told her she did not want anything to with her or Jacob. On July 18, the Department detained the Minors. On July 22, the Department filed a section 387 supplemental petition to remove the Minors from Mother's care, making various allegations relating to Mother's substance abuse. An August amended petition alleged substance abuse by Jacob's father. The Minors were placed together in foster care.

---

[1] The petitions were filed in Santa Clara County, but the matter was eventually transferred to Solano County. All undesignated statutory references are to the Welfare and Institutions Code.

[2] Mother is married to Jacob's father, who is not involved in the present appeal. Mother reported that Hannah's father is deceased.

[3] The record reflects that Mother has long struggled with substance abuse, mental illness, and homelessness, but it is unnecessary to detail that history in order to resolve the present appeal.

In August 2014, the Department recommended termination of services for Mother and Jacob's father, and requested the setting of a section 366.26 permanency planning hearing. In September, the juvenile court terminated services for both parents and set the cases for a section 366.26 hearing in January 2015.

In its report for the January 2015 hearing, the Department recommended termination of parental rights and adoption as the permanent plan for the Minors. The current foster care parents were committed to adopting the Minors. Mother and Jacob's father were living in Missouri and video-chatting with the Minors on a weekly basis. Mother told the Department she supported a permanent plan of guardianship for the Minors with the current caregivers, but opposed adoption. Neither Mother nor Jacob's father appeared at the January hearing, or at a contested hearing date in February.

At the February 2015 contested hearing, Mother's counsel objected to termination of parental rights and submitted on the Department's report. Counsel requested that the court adopt a permanent plan of guardianship to continue the existing relationship between the Minors and Mother. Counsel for the Minors advised the juvenile court that Hannah's wish was to return to the custody of Mother and Jacob's father, but if that were not possible she wanted to be adopted by her current caregivers. The juvenile court terminated all parental rights and selected adoption as the permanent plan for both Minors. This appeal followed.

DISCUSSION

Mother contends the juvenile court erred in failing to find the beneficial relationship exception (§ 366.26, subd. (c)(1)(B)(i)) precluded termination of her parental rights to Minors. We review the court's finding the exception did not apply for abuse of discretion. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351 (*Jasmine D.*).)[4]

---

[4] Although appellate courts have routinely reviewed termination orders for substantial evidence, Division Three of this court has ruled the appropriate standard is abuse of discretion. (*Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1351 [whether the exception applies is a "quintessentially discretionary determination"].) We will apply the abuse of discretion standard, recognizing as the court did in *Jasmine D.* that the practical differences between the two standards are insignificant in this context. (*Ibid.*)

At a section 366.26 hearing, the juvenile court must determine a permanent plan of care for the child. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 50.) The statute provides three alternatives for permanent placement: adoption, guardianship, and long-term foster care. (§ 366.26, subd. (b); *In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 (*Autumn H.*).) Adoption is the permanent plan preferred by the Legislature "because it gives the child the best chance at [a full emotional] commitment from a responsible caretaker." (*Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1348; accord, *In re Celine R.* (2003) 31 Cal.4th 45, 53 (*Celine R.*).) Accordingly, if a juvenile court finds a child is likely to be adopted, it must terminate parental rights and order the child placed for adoption unless it finds, for one of six "compelling reason[s]," that termination of parental rights would be detrimental to the child. (See § 366.26, subd. (c)(1)(B)(i)–(vi).) The burden is on the parent to show one of the exceptions applies. (*In re C.B.* (2010) 190 Cal.App.4th 102, 122.)

The "beneficial relationship" exception applies when termination would be detrimental to the child because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) Assuming Mother's visitation and video calls satisfied the first prong of the exception, the question is whether Minors "would benefit from continuing the relationship." (*Ibid.*) To establish this, Mother was required to demonstrate the relationship "promotes the well-being of the child[ren] to such a degree as to outweigh the well-being the child[ren] would gain in a permanent home with new, adoptive parents." (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575; accord, *In re C.B.*, *supra*, 190 Cal.App.4th at p. 124.) "[T]he court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Autumn H.*, at pp. 575–576; accord, *In re C.B.*, at p. 124.) If the court finds the relationship with the parent does not benefit the child

4

significantly enough to outweigh the Legislature's strong preference for adoption, the exception does not apply.  (*Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1350.)

The juvenile court did not abuse its discretion in finding the beneficial relationship exception did not apply.  In arguing the juvenile court erred, Mother points out that the Minors love and are bonded to her, and she has occupied a parental role in their lives.  Although Mother did not present any evidence at the section 366.26 hearing, she argues the supervised visitation logs support application of the exception.  Those logs, as well as the Department's reports, show the Minors enjoyed their visits with Mother and are bonded to her, and Mother demonstrated appropriate parenting skills during those visits.  In 2013, the court-appointed special advocates for the Minors reported that visits were beneficial.

The beneficial relationship exception requires more than a showing that the parent has maintained frequent and loving contact with the child, that the two share an emotional bond, or that the parent was more than a friendly adult visitor.  (See, e.g., *Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1350; *In re Derek W.* (1999) 73 Cal.App.4th 823, 826–827.)  The exception's applicability turns on the "strength and quality" of the parent-child bond.  (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.)  A parent cannot "derail an adoption merely by showing the child would derive some benefit from continuing a relationship."  (*Jasmine D.*, at p. 1348.)  Indeed, "continued interaction between the biological parent and child will almost always confer some benefit on the child."  (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 811; accord, *Autumn H.*, at p. 575.)  Mother was required to show " 'exceptional circumstances' "—that the relationship promotes the well-being of the Minors to such a degree as to outweigh the well-being they would gain in a permanent home.  (*Jasmine D.*, at pp. 1348–1349; see also *In re G.B.* (2014) 227 Cal.App.4th 1147, 1165.)

In the present case, the evidence falls short of that necessary to mandate application of the beneficial relationship exception.  A useful comparison is the evidence presented in *In re Amber M.* (2002) 103 Cal.App.4th 681, in which the Court of Appeal held the juvenile court erred in failing to apply the exception.  (*Id.* at p. 690.)  In that

case, application of the exception was supported by substantial and specific testimony; as *Amber M.* summarized, "The common theme running through the evidence from the bonding study psychologist, the therapists, and the CASA is a beneficial parental relationship that clearly outweighs the benefit of adoption." (*Id.* at p. 690; see also *In re Scott B.* (2010) 188 Cal.App.4th 452, 471 ["The CASA repeatedly stated in her reports that Mother and [the minor] have a very close relationship and it would be detrimental to [the minor] for their relationship to be disrupted."].) In the present case there was no comparable testimony; Mother did not attend the hearing or even submit a declaration in support of application of the beneficial relationship exception. (See *In re J.C.* (2014) 226 Cal.App.4th 503, 533–534 [distinguishing *Amber M.* and stating "[t]here was no bonding study or evidence, other than Mother's self-serving declaration, to counter the social worker's conclusion [the minor] would not suffer any detriment"].) Mother was no longer living in California and there was no showing Minors would, going forward, have an opportunity for more meaningful contact with Mother than video calls.

Although the evidence showed a substantial bond between Mother and the Minors, it did not show a bond of such "strength and quality" that the juvenile court was compelled to conclude the Minors would be "greatly harmed" by termination of parental rights. (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575; see also *Adoption of Myah M.* (2011) 201 Cal.App.4th 1518, 1545 ["[the minor] has a strong bond with her father and some bond with her mother, but these bonds did not require the court to find it was not in her best interest to be adopted by her paternal grandparents when it weighed all of the factors"].) A court considering the record in this case could reasonably conclude that the permanency of adoption outweighed any benefit Minors might gain from continuing their relationship with Mother. (See *Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1348.) Notably, guardianship, the plan Mother advocated below, " 'is not irrevocable and thus falls short of the secure and permanent future' " intended by the Legislature. (*Celine R.*, *supra*, 31 Cal.4th at p. 53.) The juvenile court did not abuse its discretion in finding the beneficial relationship exception inapplicable.

6

## DISPOSITION

The juvenile court's orders are affirmed.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.

(A144363)

8