Filed 4/23/15  In re I.H. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re I.H. et al., Persons Coming Under the Juvenile Court Law. | D067086 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. EJ3610A-C) |
| Plaintiff and Respondent, | |
| v. | |
| MARIA H., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Maria H. appeals from orders terminating parental rights to her daughter I.H. (born 2011) and twin daughters (born 2012, collectively with I.H., the children) under Welfare and Institutions Code section 366.26. (Undesignated statutory references are to this code.) Maria contends the evidence was insufficient to support the juvenile court's finding that the beneficial relationship exception of section 366.26, subdivision (c)(1)(B)(i) did not apply. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

Maria gave birth to I.H. in 2011 when she was 16 years old. After I.H.'s birth, Maria suffered three arrests for driving under the influence, possessing and transporting a controlled substance and carrying a concealed dirk or dagger.

Maria gave birth to the twins the following year. At that time, Maria was using methamphetamine and had domestic violence incidents with the father. When the twins were about three months old, the San Diego County Health and Human Services Agency (the Agency) received a referral that Maria sold her food stamps in order to purchase methamphetamine, the family home was dirty and lacked necessary essentials such as food, formula and diapers. Maria admitted she had a problem with methamphetamine and needed help with her children. The social worker reported that Maria was unable to provide a stable environment for the children due to a lack of employment, income and stable housing.

2

The Agency filed petitions alleging the children were at substantial risk of harm because Maria's substance abuse did not allow her to provide regular child care. In October 2012, the children were removed from Maria's care. Maria had not complied with on demand drug testing and failed to follow through with her intake appointment for drug treatment. The juvenile court sustained the petitions. It later declared the children dependents, removed physical custody from Maria, ordered an out-of-home placement and that reunification services be provided.

By May 2013, the children were living together in a licensed foster home. Maria had short, unsupervised visits with the children in a public setting. At the six-month review hearing in July 2013, the juvenile court concluded that returning the children to Maria would be detrimental and the services provided to her had been reasonable. It found Maria had made some progress with the provisions of her case plan and continued her services for another six months.

At the 12-month permanency hearing in December 2013, the court placed the children with Maria and provided family maintenance services. In April 2014, the Agency filed petitions under section 387, seeking a higher level of care because Maria had relapsed on methamphetamine and marijuana, the children had been exposed to domestic violence between the maternal grandmother and another adult, the children were filthy and the home had inadequate food. Additionally, Maria had been arrested in January 2014 for exhibiting a deadly weapon and April 2014 for possessing a controlled substance. After several continuances, the court made true findings on the section 387 petitions in October 2014, removed physical custody of the children from Maria and

3

ordered them placed in out-of-home care. It scheduled a hearing under section 366.26 to select and implement a permanent plan.

In November 2014, the court held the contested section 366.26 hearing. It received into evidence the Agency's reports and heard testimony from Maria. The court found by clear and convincing evidence the children were likely to be adopted and none of the statutory exceptions applied. It terminated parental rights and referred the children to the Agency for adoptive placement. Maria timely appealed.

DISCUSSION

Parental rights may be terminated if there is clear and convincing evidence of adoptability (§ 366.26, subd. (c)(1)); however, an exception exists where a parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (*Id.*, subd. (c)(1)(B)(i).) A beneficial relationship is one that promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with adoptive parents. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) The parent must show that the parent-child relationship is such that the child will be greatly harmed by the termination of parental rights, so that the presumption in favor of adoption is overcome. (*In re Brittany C.* (1999) 76 Cal.App.4th 847, 853-854.)

Implicit in this standard is that "a *parental* relationship is necessary for the exception to apply, not merely a friendly or familiar one." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.) The existence of this relationship is determined by taking into consideration "[t]he age of the child, the portion of the child's life spent in the parent's

4

custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs . . . ." (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.) There is a split of authority regarding whether an appellate court reviews a challenge involving the beneficial relationship exception for substantial evidence, abuse of discretion, or a combination of the two. (See *In re K.P.* (2012) 203 Cal.App.4th 614, 621-622.) Our conclusion, however, is the same under any of these standards.

The Agency concedes Maria maintained regular visitation with the children. Accordingly, we focus on the second prong and examine whether the children would benefit from continuing their relationship with Maria. (§ 366.26, subd. (c)(1)(B)(i).) On this prong, Maria must overcome the presumption in favor of adoption by showing her relationship with the children is such that the children will be greatly harmed by the termination of parental rights. (*In re Brittany C.*, *supra*, 76 Cal.App.4th at pp. 853-854.) After reviewing the record we conclude that the juvenile court's findings are supported by substantial evidence and are not an abuse of discretion.

I.H. was about 18 months old and the twins were about three months old when the Agency removed them from Maria's care. At that time, Maria was living with the maternal grandmother who was unaware of Maria's drug use. Although Maria regained custody of the children for about four months, she relapsed on methamphetamine and the children were again removed.

At the time of the section 366.26 hearing, the children had not lived with Maria for about seven months. After multiple placements, the children had been living together with their prospective adoptive parents since August 2014. The foster parents have

expressed their commitment to permanently meeting the children's needs, are prepared to take on the responsibility of providing for them in all aspects of their lives and wish to adopt the children as a sibling set. The children respond well to the directives of the foster parents and willingly return to the foster home after visits.

In contrast, the social worker commented in an October 2014 report that Maria had been discharged from her drug treatment program in September 2014 due to poor compliance. Despite being offered 21 months of reunification services, the social worker remained concerned for the safety of the children while in Maria's care noting Maria required ongoing prompting regarding how to meet the needs the children would express during visits. The social worker commented on the quality of contact Maria had with the children, noting the children were "not responsive to [Maria's] directives and [Maria was] unable to take on the parental role." The social worker concluded that the "parent-child relationship [was] not significant," did not outweigh the benefits of adoption and it would not be detrimental for the children if the court terminated Maria's parental rights.

The juvenile court was entitled to credit the assessments and conclusions of the social workers. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53.) Moreover, "delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*Id.* at p. 47.) While the children had a meaningful relationship with Maria, the record here does not support a conclusion that this is an extraordinary case where preservation of the parent's rights should prevail over the Legislature's preference for adoptive placement. (*In re Jasmine D.*, *supra*, 78

6

Cal.App.4th at p. 1350.)  Given the lack of evidence that the children would be harmed if the parent-child relationship is severed, we conclude the juvenile court did not err in determining that the beneficial parental relationship exception to adoption did not apply.

## DISPOSITION

The orders are affirmed.


McINTYRE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.