Filed 10/8/14  In re G.J. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re G.J. III, a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E061264 |
| Plaintiff and Respondent, | (Super.Ct.No. J244875) |
| v. | OPINION |
| G.J, Jr. | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher Marshall, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant (father).

Jean-Rene Basle, County Counsel, and Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant G.J., Jr. (father), challenges the juvenile court's ruling terminating his parental rights to G.J. III (child) and selecting adoption with the maternal aunt as the child's permanent plan. The child was six years old at the time of the ruling, which was made at a hearing held under Welfare and Institutions Code section 366.26.[1] Father contends the court erred when it declined to apply the beneficial parent-child relationship exception to the statutory preference for adoption. As discussed below, we affirm the court's ruling.

FACTS AND PROCEDURE

*Removal—June 2012*

On June 23, 2012, the San Bernardino County Children and Family Services (CFS) received an emergency response referral from the San Bernardino Police Department. The child's mother had found belt marks on the four-year-old child's back after picking him up from father for her weekly visit. The child told the responding social worker that father had hit him on the back with a belt, and the social worker found five belt marks on the child's back. The child told the social worker that father often gets mad and hits him with a belt and with a stick and "socks me in the belly." The child said that father drinks a lot of beers and is always mad. The child stated he did not want to return to father's home. The maternal aunt told the social worker that she had custody of some of mother's other children because of mother's history of drug use, and that she had

_____

[1] All section references are to the Welfare and Institutions Code unless otherwise indicated.

2

reported father several times after seeing marks on the child. Father denied ever having spanked the child and was very angry. He stated mother was trying to frame him. The child was sent home with the maternal aunt.

On June 27, 2012, CFS filed a section 300 petition alleging serious physical harm under subdivision (a), in that father had struck the child several times on the back with a belt. CFS also alleged failure to protect under subdivision (b) in that father had a substance abuse problem and a history of domestic violence, and mother had a substance abuse problem, had failed to reunify with several children, and had a history of domestic violence.

At the detention hearing on June 28, 2012, the juvenile court found a prima facie case for detention and ordered the child detained in the maternal aunt's home.

*Jurisdiction and Disposition—July 2012*

In the jurisdiction and disposition report, CFS recommended the court find each of the allegations true and offer reunification services to both parents. The report showed that father has a long history of arrests, including one for battery with serious bodily injury, two for burglary, several for corporal injury on a spouse, and several for driving under the influence. Mother has a similar history, minus the burglaries and battery but includes assault with a deadly weapon. The report also documented 12 separate referrals to CFS regarding this child, from 2007 to 2011, mostly for physical abuse and neglect, five of which were substantiated. Both mother and the maternal aunt stated they often saw and reported signs that father was physically abusing the child on a regular basis.

3

The child stated father beat him with the belt the day before he was detained because he drank chocolate milk when he was not supposed to. In the police report from the June 23 incident, the child is described as saying his dad hits him a lot with a belt or a stick. Father denied beating the child or having a history of domestic violence. The child told the social worker that he did not want visits with father.

The contested jurisdiction and disposition hearing was held on July 17, 2012. Mother waived her rights. The paternal grandmother testified that she had bathed and dressed the child the night before he was removed and did not see any marks on him. She also testified that she saw father spank the child with a belt once after the child repeated things his mother had told him. Father testified that he did spank the child about two months before the removal because the child said some upsetting things after returning from a visit with his mother. Father made sure that the child did not mention his mother's name in father's house. After hearing testimony and argument, the juvenile court found the allegations in the petition to be true and added an allegation regarding father imposing improper rules on the child and then imposing improper discipline when the child violates the rules. This allegation arose from father's testimony about spanking the child for mentioning mother's name. The court ordered reunification services and weekly supervised visits for both parents.

*Six-Month Review—February 2013*

In the report prepared for the six-month review hearing, CFS recommended the child remain in placement with the maternal aunt and that reunification services continue

4

as to both parents. Father was making significant progress in his reunification plan and visited with the child fairly regularly, except when his work required last minute schedule changes. The social worker reported that father did not interact with the child very much during supervised visits, but rather watched and supervised him. Father did spend some time reading with the child after being prompted, but did not play with him. At the six-month review hearing held on February 13, 2013, the juvenile court ordered six more months of services, changed father's weekly visits to unsupervised, and authorized the social worker to liberalize visits.

*Twelve-Month Review and Suspension of Visits—August-October 2013*

In the report prepared for the 12-month review hearing scheduled for August 13, 2013, CFS recommended the child be returned to father's care with the dependency continued. Father had made significant progress in his reunification plan. The child visited father regularly in his home and had progressed to unsupervised weekend visits.

However, on August 9, 2013, the social worker filed an "Additional Information to the Court," in which it recommended visits with father be suspended. Father had become angry for some reason and dragged the child across the floor by his shirt. This caused rug burn to the child's neck and some scratches on the child's left leg. Father had also socked the child in the leg and hit him in the face, leaving a mark alongside his right eye. The court suspended visits with father because they were detrimental to the child and ordered both parents to drug test.

CFS filed two "Additional Information to the Court" documents, on September 26 and October 15, 2013. Although the record is unclear, father tested positive for drugs at least once in September. The child told an interviewer that father would scream and yell at him during visits, and once threw an orange that hit him in the stomach and "hurt." The child stated he wanted to live with his paternal aunt and did not want to go back to father.

The twelve-month review hearing took place on October 15-16, 2013. CFS asked to continue services to mother but terminate them as to father. The social worker testified that be believed father's home was not a safe place for the child. When father testified, he denied causing any injuries to the child or physically disciplining him. At the conclusion of the hearing, the court terminated services to father, continued them to mother, and terminated father's visits as detrimental to the child.

*Eighteen-Month Review—December 2013*

In the report prepared for the 18-month status review hearing, CFS recommended setting a section 366.26 hearing to establish a permanent plan for the child. Visits with father were still suspended and the child stated he did not want to see his father. Mother had stopped participating in services and her visits had been changed from unsupervised to supervised. The child was doing well at school and in the home of the maternal aunt. At the hearing held on December 20, 2013, the juvenile court set a section 366.26

6

hearing, terminated mother's services and continued the order that father's visits with the child would be detrimental.[2]

*Section 366.26 Hearing—April 2014*

In the section 366.26 report, CFS recommended the court terminate parental rights to both parents and choose adoption as the child's permanent plan. The child was doing well in the maternal aunt's home, where he had lived since June of 2012, and where two of his siblings also lived. The aunt was willing to adopt the child. The child continued to say that he did not want visits with father. The child was having supervised visits with mother, but stated he did not want to live with her, he wanted to live with the maternal aunt.

The section 366.26 hearing was held on April 21, 2014, and was contested by both parents. Father testified that he had custody of the child from the age of 16 months to four years. Father's reason for contesting the recommended permanent plan of adoption was because "his best interest would be with his father because can I teach him a lot of things, give him the security and protection that he needs and make sure he's—he's progressive and successful in his life." Father stated on cross-examination that he had last seen the child on August 2, 2013.

---

[2] Father filed a writ challenging the order setting the section 366.26 hearing. However, this court dismissed the petition on January 24, 2014, after father's appointed counsel filed a "no issues" brief. (Court of Appeal Case No. E060265)

7

Father argues the juvenile court erred when it declined to find that the beneficial parent-child relationship exception to the statutory preference for adoption applies here.

A. *Applicable Law*

At a section 366.26 permanency planning hearing, the juvenile court determines a permanent plan of care for a dependent child. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 50.) Permanent plans include adoption, guardianship, and long-term foster care. (*In re S.B.* (2008) 164 Cal.App.4th 289, 296.) "Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.) To avoid adoption and termination of parental rights at a section 366.26 hearing, a parent has the burden of showing one or more of the statutory exceptions to termination of parental rights set forth in section 366.26, subdivisions (c)(1)(A) or (B) apply. (*In re Scott B.* (2010) 188 Cal.App.4th 452, 469; *In re Celine R.* (2003) 31 Cal.4th 45, 53.)

The parental benefit exception applies when two conditions are shown: the parent has "maintained regular visitation and contact with the child *and* the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i), italics added; *In re Angel B.* (2002) 97 Cal.App.4th 454, 466.) The parent must show that the parent-child relationship "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. . . . If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the

8

preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H., supra,* 27 Cal.App.4th at p. 575.)

"'The balancing of competing considerations must be performed on a case-by-case basis and take into account many variables, including the age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs. [Citation.] When the benefits from a stable and permanent home provided by adoption outweigh the benefits from a continued parent/child relationship, the court should order adoption.' [Citation.]" (*In re Jasmine D* (2000) 78 Cal.App.4th 1339, 1349-1350.)

B. *Standard of Review*

Appellate courts have traditionally applied either the substantial evidence test or the abuse of discretion test in considering challenges to juvenile court determinations that the parental benefit exception did not apply. (*In re Scott B., supra,* 188 Cal.App.4th at p. 469.) There is little, if any, practical difference between the two. (*Ibid.*)

C. *Analysis*

Father's counsel does not make a reasoned argument, with relevant citations to the record, to support the stated contention that the court erred in declining to find a beneficial parent-child relationship. This is very much not a criticism of counsel, but an observation that there is little or no basis in the record upon which to make such an argument.

First, father did not maintain regular visitation and contact with the child. This is because father's renewed, or perhaps continued, physical abuse of the child caused the juvenile court nine months earlier to suspend and later terminate the visits as detrimental to the child. Thus, father does not fulfill that portion of the analysis and so cannot show error by the juvenile court.

Second, even if we were to reach the second requirement for the beneficial parent-child relationship exception, father cannot establish that the court erred when it found the benefits to the child from his relationship with father did not outweigh the benefits of adoption by the maternal aunt. The six-year-old child had lived with the aunt for nearly the last two years, nearly one-third of his life, and was doing well in her care. Father testified that he had custody of the child from the age of sixteen months to four years. In addition, the child had stated that he wanted to continue living with his maternal aunt, and specifically did not want to even visit with father. Finally, the effect of the interaction between father and the child was manifestly negative, as father physically abused the child even as CFS was preparing to recommend the child be returned to his custody.

For these reasons, father has not established that the juvenile court erred when it terminated his parental rights and selected adoption as the child's permanent plan.

**DISPOSITION**

The juvenile court's orders terminating parental rights and selecting adoption as the child's permanent plan are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

CODRINGTON
J.

11