Filed 8/31/15  In re D.P. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.P., a Person Coming Under the Juvenile Court Law. _____ SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY,      Plaintiff and Respondent,      v. BROOK C.,      Defendant and Appellant. | D067879 (Super. Ct. No. EJ3700) |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Brook C. (Mother) appeals from an order terminating parental rights to her daughter D.P. under Welfare and Institutions Code section 366.26. (Undesignated statutory references are to the Welfare and Institutions Code.) Mother contends the insufficient evidence supported the juvenile court's finding that the beneficial relationship exception of section 366.26, subdivision (c)(1)(B)(i), applied. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Thomas P. (Father) started using drugs as young teenagers. In early August 2013, when D.P. was about two years old, Mother injected heroin residue from cotton balls, contracted blood poisoning and was hospitalized. Father was arrested for being under the influence and was unavailable to care for D.P. The San Diego Health and Human Services Agency (Agency) took D.P. into protective custody. A few days later, the Agency filed a petition alleging D.P. was at substantial risk of harm due to her parents' heroin use. The Agency placed D.P. in the home of the maternal great-grandmother. In September 2013, the juvenile court sustained the petition, declared D.P. a dependent and maintained her placement with the maternal great-grandmother. It ordered reunification services be provided and set a six-month review hearing.

At the six-month review hearing in April 2014, the court found returning D.P. to parental custody would be detrimental and the services provided had been reasonable. It ordered six more months of services for Mother, but terminated court-mandated services to Father and continued D.P. as a dependent. During the dependency proceedings Father failed to address his substance abuse issues and suffered multiple arrests. At the 12-month permanency hearing in October 2014, the court terminated court-mandated

2

services to Mother, finding she had not made substantive progress with the provisions of the case plan and scheduled a hearing under section 366.26 to select and implement a permanent plan.

At the contested section 366.26 hearing in April 2015, the court found by clear and convincing evidence D.P. was likely to be adopted and none of the statutory exceptions to adoption existed. It terminated parental rights and referred D.P. to the Agency for adoptive placement. Mother timely appealed.

## DISCUSSION

Parental rights may be terminated if there is clear and convincing evidence of adoptability (§ 366.26, subd. (c)(1)); however, an exception exists where a parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) A beneficial relationship is one that promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with adoptive parents. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) The parent must show that the parent-child relationship is such that the child will be greatly harmed by the termination of parental rights, so that the presumption in favor of adoption is overcome. (*In re Brittany C.* (1999) 76 Cal.App.4th 847, 853-854.)

Implicit in this standard is that "a parental relationship is necessary for the exception to apply, not merely a friendly or familiar one." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.) The existence of this relationship is determined by taking into consideration "[t]he age of the child, the portion of the child's life spent in the

3

parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs . . . ." (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.) There is a split of authority regarding whether an appellate court reviews a challenge involving the beneficial relationship exception for substantial evidence, abuse of discretion, or a combination of the two. (See *In re K.P.* (2012) 203 Cal.App.4th 614, 621-622.) We need not weigh in on this debate as our conclusion is the same under any of these standards.

Mother concedes there were gaps in her visitation, but claims she "partially satisfied" the first prong of the beneficial relationship exception. We disagree.

In September 2013, about a month into the dependency proceeding, Mother tested positive for methamphetamine. The following month, she was arrested after law enforcement found heroin and drug paraphernalia in the vehicle that she and Father were in. The parents were arrested for being under the influence. In October and November 2013, Mother attended three of four scheduled visits. In early December 2013, the criminal court issued a protective order prohibiting Mother from having contact with D.P. About two weeks later, the criminal court modified the order and the parents were offered weekly supervised contact.

From January 2014 to July 2014, there is little in the record regarding Mother's visitation with D.P. A report dated April 2014 indicated that in early April 2014, Mother enrolled in "CRASH" long-term inpatient treatment and that visitation had not been consistent. Mother self-discharged from CRASH the following month. In August 2014, Mother's visits became more frequent. Again, from September 2014 to January 2015,

4

there is little in the record regarding Mother's visitation. In February 2015, the social worker reported that Mother did not maintain contact with the Agency and has not had Agency supervised visitation with D.P. since January 2015. In early April 2015, the month of the section 366.26 hearing, the social worker again reported that Mother's last visitation had been in January 2015. This record shows sporadic visitation which is insufficient to satisfy the first prong of the parent-child relationship exception to adoption. (*In re C.F.* (2011) 193 Cal.App.4th 549, 554.)

We also conclude that substantial evidence supports the juvenile court's determination that Mother did not meet her burden of establishing the second prong of the beneficial parent-child relationship exception. Satisfying the second prong requires the parent to prove that "severing the natural parent-child relationship would deprive the child of a *substantial,* positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.)

Although D.P. enjoyed her supervised visits with Mother, in the professional opinion of the social worker who prepared the Agency's section 366.26 permanency planning assessment report, the relationship Mother had with D.P. did not rise to the level of a significant parental role. The social worker noted that D.P. "demonstrated the ability to thrive in the absence of her parents" and that her caregivers wanted to adopt her. Mother points out that the section 366.26 report contains an error, stating that D.P. lived

5

with her parents until she was seven months old, rather than two years and seven months. Given the balance of the record, particularly the parents' long-term drug use and their resistance to drug treatment, this error is of little import.

We uphold the juvenile court's conclusion that no beneficial relationship existed such that termination of parental rights would be detrimental to D.P. Rather, D.P.'s prospective adoptive parents were providing her with the stability and affection she needed for her well-being. Delaying the selection of a permanent home for D.P. does not promote her best interests. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

DISPOSITION

The order is affirmed.

McINTYRE, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.

6