Filed 9/2/15  In re Madison M. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re MADISON M., a Person Coming Under the Juvenile Court Law. | B261489 |
| | (Los Angeles County Super. Ct. No. DK06294) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| ALLISON M., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Marilyn Kading Martinez, Commissioner.  Affirmed.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jeanette Cauble, Deputy County Counsel for Plaintiff and Respondent.

Allison M. (mother) appeals from a juvenile court judgment assuming jurisdiction of her child, Madison M. (born December 2006), placing Madison in the custody of her father and ordering monitored visits for mother.[1]  Mother challenges the juvenile court's order restricting her to monitored visits with Madison.  We find that the juvenile court did not abuse its discretion by ordering monitored visits in light of mother's history of drug use.

## FACTUAL AND PROCEDURAL BACKGROUND

The family in this case consists of mother, father and Madison.  Mother and father are divorced.  At the time of the incidents described below, mother and father were sharing joint custody of Madison.  Madison would spend alternate weekends and every Monday morning through Wednesday evening with father.  Mother had physical custody at all unspecified times but with a specified schedule for holidays.

The family had six prior cases or referrals with the Los Angeles County Department of Children and Family Services (DCFS).  Five of the referrals were either evaluated out, deemed inconclusive or deemed unfounded.  However, a January 21, 2009 referral alleged that mother abused alcohol and prescription drugs.  Mother had been observed to be intoxicated while caring for Madison, and had displayed bizarre behavior when she separated from father.  The family agreed to participate in a voluntary family maintenance case, which was closed on June 30, 2009, after father completed the family preservation plan and mother tested negative for drugs.

**Car accident June 12, 2014, and investigation**

Mother brought Madison to the emergency room on June 12, 2014, with a broken femur.  Mother stated that Madison had been hit by a car.  Mother appeared intoxicated, was very drowsy, and kept falling asleep.  Mother was unable to explain the circumstances of how Madison was hit by the car.

When father arrived at the hospital, the DCFS social worker interviewed him.  Father stated that he and mother do not get along, and that one of the reasons he divorced

---

[1]      Madison's father, Alex M. (father) is not a party to this appeal.

her was her addiction to drugs. Father said mother abused crystal meth and prescription medication in the past, and a DCFS case was opened in 2008. Father said mother had cleaned up, but it appeared she had relapsed.

Mother was interviewed by a social worker at approximately 1:00 a.m. at the hospital. Mother appeared sober at the time, and did not smell of alcohol. Mother reported that earlier she had been on Van Nuys Boulevard between Erwin and Sylvan. Mother stated that she was at the Victim's Assistance Program seeking resources because she had been threatened by her neighbor, Alicia.[2] Mother claimed that Alicia was father's girlfriend. Mother claimed she and Madison were crossing the street legally in a crosswalk when a car came speeding towards them. Mother attempted to pull Madison out of the way, but she went forward and was struck by the car.

Mother stated she had been suffering from depression for the last five years -- since her split from father. She accused father of assaulting her and stalking her. Mother is prescribed Prozac and Xanax, denied substance abuse, and denied any prior open cases with DCFS.

The social worker telephoned the hospital on June 13, 2014. It was reported that mother had thrown up in the morning, stating she felt very sick and exhausted. Father was at the hospital, and every hour, the parents were switching off seeing Madison because they could not be in the same room together. A security guard was placed in Madison's room due to the parents' behavior. The following day, the hospital social worker reported again to DCFS that mother was throwing up but would not say why. The child was to be discharged home with father with a cast on her leg on June 15, 2014.

Mother was interviewed again at her home on June 17, 2014. Mother stated that she was holding Madison's hand when the accident happened, and that she had warned Madison to stop walking ahead of her. She said the car appeared out of nowhere and struck Madison. Mother denied a history of drug abuse or criminal arrests. There were no safety threats in the home and there was an adequate supply of food.

---

[2] Mother had filed a restraining order against Alicia, but the matter was dropped.

3

Mother denied she was under the influence of drugs or alcohol at the hospital, but admitted currently taking Sudafed, Xanax, Tussin DM, Nyquil, steroids, Albuterol and Advair. Mother said she was diagnosed with anxiety due to domestic violence with father.

On June 18, 2014, the DCFS social worker discovered that mother had tested positive for amphetamines and methamphetamines on June 13, 2014. The social worker checked and determined that none of mother's prescription medications would have resulted in a positive test for amphetamines and methamphetamines.

The following day, the social worker and her supervisor visited mother. Mother became flustered when they discussed the positive drug test, and denied using amphetamines or methamphetamines. Mother brought up the possibility of a false result.

The social worker received a traffic collision report regarding the motor vehicle accident. The driver of the car that struck Madison said she observed an adult female trying to cross the street mid-block. She applied the brake, but noticed a child running in front of her car. She struck the child, then noticed that the female crossing the street mid-block was the child's mother.

Police interviewed mother, who admitted that due to heavy traffic, she attempted to cross the street mid-block with Madison. She said after they made it to the middle of the road, Madison let go of her hand and ran in front of the car. Mother stated that she shouted for Madison to stop, but Madison did not listen to her. A collateral witness also stated that mother and Madison were attempting to cross the street mid-block. Another witness observed Madison crossing the street, lane-by-lane in traffic.

Father was again interviewed. Given his concerns about the accident, father had driven by the intersection where the accident took place and stated that it was not a good place to cross due to the heavy traffic and he believed the accident was avoidable. He also believed that mother was under the influence of methamphetamines when he arrived at the hospital on June 12, 2014. When the social worker inquired about the neighbor Alicia, father confirmed that Alicia is not his girlfriend and that he has only spoken to her

4

one or two times. Father believed that mother's recent use of methamphetamine had caused her to lose weight and made her absentminded.

On June 23, 2014, mother tested negative for drugs. Father also tested negative for drugs.

On July 7, 2014, DCFS obtained a removal warrant detaining Madison from mother.

**Section 300 petition and detention hearing**

On July 11, 2014, DCFS filed a petition on behalf of Madison pursuant to Welfare & Institutions Code section 300.[3] The petition, as amended, contained one allegation against mother under section 300, subdivision (b) (failure to protect):

> "The child Madison[]'s mother . . . has a history of substance abuse including prescription medication and tested positive for methamphetamine the day after she caused the child to jaywalk on a busy public street resulting in the child being struck by an on-coming vehicle. The child sustained a left distal femur fracture. Hospital staff opined that mother appeared under the influence. Such a detrimental and endangering situation established for the child by the mother endangers the child's physical health and safety and places the child at risk of physical harm and danger."

The initial hearing took place on July 11, 2014. Both parents appeared and were appointed counsel. Father was found to be the presumed father of Madison. The court found that there was a substantial danger to Madison if left with mother, and ordered that Madison be released to father.

**Jurisdiction/disposition report**

The jurisdiction/disposition report was filed August 15, 2014. DCFS reported that Madison was now walking with crutches and a leg brace. She stated that she was happy living with father, but wanted to be with both parents. She denied any knowledge of mother using drugs or alcohol, and denied being neglected by mother. In describing the accident, Madison reported that she and mother had been crossing in the middle of the street, and that her hand slipped out of mother's hand when she was hit by the car.

---

**3** All further statutory references are to the Welfare & Institutions Code.

Mother continued to deny that she had a drug problem, and insisted that the positive drug test was for Sudafed. However, mother enrolled in a drug treatment program through Kaiser and was attending Narcotics Anonymous meetings. Mother was attending therapy with Dr. Nichols, who reported that mother was making good progress in dealing with her clinical depression. Mother continued to take Xanax and Prozac, which she claimed to have been taking since Madison was born. Mother now admitted that due to traffic congestion, she and Madison decided to walk a little outside of the crosswalk.

Father reported that he and mother married in 2003 and he first started having suspicions about her drug use in 2008 when they were on a cruise. At the time, the two separated and went through a voluntary family maintenance case. Father reported that when mother called father from the hospital to report that Madison was in an accident, father panicked and mother stated "Oh stop being a drama queen" and hung up the phone on him.

Mother had been receiving regular monitored visits with Madison, which were going well. Mother continued to deny any drug use or drug history. Father remained concerned about mother's drug use.

Based on the investigation, DCFS concluded that the child and the mother were jaywalking at the time of the accident that caused Madison's injury. Mother denied that they were jaywalking and explained Madison's injury as "only one injury" which was an indication of mother's nonchalant attitude regarding the incident. Mother denied any drug problems and continued to insist that her positive drug test was a result of Sudafed. Despite mother's compliance with all programs during the 2008 case, the new case presented similar problems and mother was in denial regarding her drug use. DCFS took the position that mother should accept responsibility as to her drug abuse in order to fully benefit from the programs she was attending. DCFS asked that the petition be sustained. However, because Madison was safe in father's home, DCFS recommended that jurisdiction be terminated granting father sole physical custody, with joint legal custody per the current family law order.

6

**Jurisdiction hearing**

At the hearing on December 15, 2014, mother offered documents from her therapist and drug treatment programs. She also offered the results of drug tests. All of the documents were entered into evidence. Mother's therapist, Dr. Nichols, wrote a letter expressing her belief that it was in Madison's best interest to be able to be with her mother without restricted visits. Dr. Nichols also had the opportunity to be involved in a conjoint counseling session with the family and everything had gone well. Dr. Nichols had observed loving interaction between mother and Madison. Mother had participated in regular group and individual drug treatment sessions between August and October 2014. Mother's drug screens were all negative for amphetamines. Mother had entered Tarzana Treatment Center on October 30, 2014, and had been testing weekly with negative results.

The DCFS social worker testified that she had monitored two visits between mother and Madison, and observed mother engaging in inappropriate conversations with Madison, including referring to when and if Madison came home to mother's house. In addition, the social worker observed mother whispering to Madison during the first visit, but mother stopped after the social worker told her it was inappropriate. The social worker had never observed mother to be under the influence of drugs or alcohol, but father had informed the social worker that he was concerned because mother had slurred her speech and been nonresponsive during monitored telephone contact. The social worker testified that mother still did not believe that she had a substance abuse issue, and did not take responsibility for the accident.

Dr. Nichols testified that she had been seeing mother weekly since July. Dr. Nichols stated that mother had taken full responsibility for the accident. Mother had said she wished she had never walked across the street without being in a crosswalk. Dr. Nichols was aware that mother had tested positive for methamphetamine, but she believed mother when she said that it was because she was taking Sudafed. Dr. Nichols did not observe mother to have any addiction issues during the therapy sessions.

7

Dr. Nichols stated that mother and Madison were very close and bonded, and that she did not believe there should be any restrictions during visits.

The matter was continued to January 6, 2015, for argument. Following argument, the juvenile court found true by a preponderance of the evidence the allegations of the amended petition, and declared Madison to be a child described by section 300, subdivision (b).

At the dispositional phase of the proceeding, the juvenile court announced its decision to maintain jurisdiction of Madison, with family maintenance services for father and services for mother including drug rehabilitation, random testing, conjoint counseling with Madison, and individual counseling. The court strongly recommended that mother enter therapy with a new therapist, so that she could "perhaps be able to acknowledge that she was using illegal substances at or about the time of the accident, that she was not sufficiently coherent and that led to her making, what she said, is the worst decision or mistake of her life." The juvenile court felt "[t]hat is what we are lacking here."

Mother's visits were to remain monitored, with DCFS discretion to liberalize.

On January 9, 2015, mother filed a notice of appeal from the findings and orders of the court on January 6, 2015.

## DISCUSSION

Mother's sole claim of error on appeal is that the trial court abused its discretion in requiring supervised visitation between mother and Madison rather than unmonitored visitation.

### I. Standard of review

An order setting visitation terms is reviewed for abuse of discretion. (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1704.) Visitation should be as frequent as possible, consistent with the well-being of the child. (§ 362.1, subd. (a)(1)(A)). The juvenile court must balance the rights of the parent with the best interest of the child. (*In re John W.* (1996) 41 Cal.App.4th 961, 973-974; *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757.) A visitation order may not jeopardize the safety of the child. (§ 362.1, subd. (a)(1)(B).)

8

An abuse of discretion does not occur unless the juvenile court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. (*In re Tamneisha S.* (1997) 58 Cal.App.4th 798, 806.) When applying the abuse of discretion test, the reviewing court should reverse only if no judge could have reasonably made the order being challenged. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.)

## II. The juvenile court did not abuse its discretion in making the visitation order

In this case, mother's actions placed Madison in an extremely dangerous situation, causing a severe injury to the child. At the time the juvenile court made the visitation order, mother had yet to acknowledge methamphetamine use, despite a positive test for this drug following the accident. Mother not only denied that she had a substance abuse problem at the time of the accident, she denied that she ever had a substance abuse problem. However, contrary to mother's statements, the record shows that she not only had a substance abuse problem in the past but that it led to prior involvement by DCFS.

DCFS and the trial court were concerned with mother's failure to admit to drug use and failure to admit that drug use caused the danger to Madison. The juvenile court noted that mother has a history of substance abuse and has been in treatment programs since the case began. The court further explained:

> "I must take the history and the occurrence of the accident, the positive test the day after the accident, the opinions of medical professionals on the day of the accident . . . . I don't have sufficient evidence that [mother] accepts responsibility of reasonably likely being under the influence on the day of the accident."

The court felt that mother failed to acknowledge that "not only did she make a terrible mistake and use poor judgment, she likely was impaired in her thinking or cognition from drugs given the positive test and the opinions of medical staff."

The juvenile court did not abuse its discretion in ordering monitored visitation under the circumstances. Mother's failure to acknowledge her own drug use leaves open the possibility that she might use drugs again with Madison in her care. This in turn

9

leaves open the possibility that mother might put Madison in another dangerous situation. In short, mother's insistence that she will never jaywalk again does not address the more critical problem, which is her drug use.

The juvenile court was clearly concerned for Madison's safety in the care of mother given that mother continued to deny any substance abuse problem, past or present. Under the circumstances, it was within the juvenile court's discretion to order monitored visits.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
        CHAVEZ

We concur:


_____, P. J.
BOREN



_____, J.
HOFFSTADT

10